McADAMS v. STATE.

MURDER. In the sudden killing of a human being, with a deadly weapon, and without provocation, the law implies malice. It is not necessary, to constitute murder, that any animosity should exist towards the deceased. A corrupt and wicked motive, and intention to do evil, is sufficient; nor is it necessary that the intention to kill should have been formed for any length of time, if it existed at the *instant* of the killing.

To warrant a conviction of murder in the first degree, the jury must be satisfied, beyond a reasonable doubt, that the killing was willful, deliberate, malicious and premeditated.

The statute defining murder does not require that there should be a predetermined intention to kill fixed in the mind, after mature reflection.

INDICTMENT FOR MURDER. An indictment which alleges that the prisoner "feloniously, willfully, and of his malice aforethought, did shoot," &c., is a good indictment for murder in the first degree.

An indictment, good at common law, for the crime of murder, is good in this State for the crime of murder in the *first* degree.

Appeal from Union Circuit Court.

Hon. George W. McCown, Circuit Judge.

J. H. Askew and M. L. Rice, for appellant.

At common law, the willful killing of a human being, with malice aforethought, was murder, the punishment of which was death; and an indictment that charged such a killing was sufficient to support a verdict of guilty and a judgment of death.

In this State, murder committed with malice aforethought, simply, is not a capital offense. See *Gould's Digest*, page 328, sec. 7.

To constitute this crime the act must be committed not only with malice aforethought (which is necessary in murder in the second degree) but it must be *premeditated*, which was not necessary to constitute murder at common law.

Montgomery, Attorney General, for appellee.

The fact of killing with a deadly weapon is, *prima facie*, evidence that the design to kill was formed in the mind of the party committing the act, and that the killing was in consequence of such design. See *Bevens v. The State*, 11 *Ark.*, 455.

The law fixes no length of time, if the person has actually formed the purpose maliciously to kill, and deliberated and premeditated upon it before he performs the act. He is guilty of murder in the first degree, however short the time may have been between the purpose and its execution.

It is not the time that constitutes the distinctive difference between murder in the first and second degree, but the actual existence of such purpose. Mature deliberation and premeditation constitute the crime of murder in the first degree. *Shoemaker v. The State*, 12 *O.*, 43; *People v. Enoch*, 13 *Wendell*, 159.

The same doctrine is more fully settled and explained in the

following cases and authorities: 2 *Wheeler's cases*, 84; *The Commonwealth v. McGee*, 1 *Ashmead*, 299; *Same v. Dougherty*, *Brown's Rep.*, 221; *The State v. Cheatwood*, 2 *Hill*, (*S. C.*,) 464.

The statutes of the different States, defining murder, under which these adjudications were made in the cases referred to, are substantially the same as the statute of the State of Arkansas.

WILSHIRE, C. J.

At the September term, 1868, of the Union county circuit court, George McAdams was convicted and sentenced to be hung on the 23d day of October following, on an indictment for the murder of one General Moore. The defendant below moved the court for a new trial; the court overruled the motion; to which ruling of the court below defendant excepted, tendered his bill of exceptions, and appealed to this court.

The errors of the court below, complained of by the appellant, are:

1. Because the court below erred in giving the instructions asked by the State, numbered one, two, three and four.

2. That the court erred in refusing to give the second instruction asked by the appellant.

3. That the verdict of the jury is contrary to the first, third and fourth instructions asked by the appellant and given by the court.

4. Because the verdict of the jury is contrary to the law and the evidence.

5. Because the verdict of the jury is contrary to the evidence.

6. Because the court erred in refusing to grant a new trial.

The motion for a new trial in the circuit court, was upon the grounds set out in first, second, third, fourth and fifth errors assigned. 1. That the court erred in giving the instructions asked by the State, numbered one, two, three and four, which is the first question we will notice.

The first instruction asked by the State and given by the court is as follows: "That murder is the unlawful killing of a human being in the peace of the State." This instruction we find to be simply a literal copy of the statute defining murder; and, as there was evidence before the jury applicable to that crime, there could have been no valid objection to its being given.

The second instruction given by the court, at the instance of the State, is: "That in the sudden killing of a human being, with a deadly weapon, without provocation, the law implies malice; and to make the killing murder it is not necessary that any particular animosity towards the deceased should exist; but a corrupt and wicked motive and intention to do evil, which results in the death of the deceased, is sufficient; nor is it necessary that the intention to kill should have been formed or existed for any long length of time; if the intention to kill was formed or existed on the instant of the killing, it is murder." It would, we think, be a strange rule of law to say that one person could kill another, willfully and intentionally, without any provocation, and say that malice would not be implied. It is laid down as a rule by Wharton, in his *American Criminal Law, vol.* 1, *sec.* 970: "If a man kill another suddenly, without any or without considerable provocation, the law implies malice, and the homicide is murder." It is not necessary that the intention to kill should have been formed for any given time before the killing; if the intention existed at the time of the killing, it is sufficient.

It has been held in Pennsylvania that, "if the party killing had time to think, and did intend to kill, for a minute, as well as an hour or a day, it is a deliberate, willful and premeditated killing, constituting murder in the first degree, within the act of the Assembly." *Com. v. Richard Smith, oyer and terminer*, 1816, *pamphlet* 231; *Com. v. O'Hara*, before McKean, C. J., *ibid.* The instruction in question does not indicate to the jury the degree of the crime, but tells them what the law requires to constitute the crime of murder generally, and was properly given.

The third instruction, given by the court, at the instance of the State, was: "If the jury believe from the evidence that the defendant, at the time he fired the gun, intended to kill the deceased, and did kill him, without any provocation, they will find him guilty of murder in the first degree."

This is the only instruction, given on the part of the State, directing the attention of the jury to what would be necessary to constitute the crime of murder in the first degree, and what they must find to convict the prisoner of that crime; and for the present, or until we examine and discuss the remaining questions, in which we will state the testimony, we are content with saying that the instruction is not objectionable.

The fourth and last instruction given by the court, at the instance of the State, was: "If the jury believe from the evidence that the defendant is not guilty of murder in the first degree, but that he killed the deceased, not in self-defense, nor by accident, nor in sudden heat of passion, and without provocation, they will find him guilty of murder in the second degree, and assess his punishment at not less than five nor more than twenty-one years in the penitentiary." By the statute there are two degrees of the crime of murder, that at common law was but one, and the statute makes it the duty of the jury, in trials on indictment for murder, if they find from the evidence that the accused is guilty of murder, to also find from the evidence the degree of murder he is guilty of. Whether murder in the first or second degree, it was, perhaps, under our statute, the duty of the court to have instructed the jury what state of facts, under the law applicable to the case, was necessary to constitute each of the degrees of the crime of murder; and we think the instruction under consideration, having the sole effect of informing the jury what state of facts would be necessary to constitute murder in the second degree, was properly given; as it is made their duty, by the statute, to determine the degree upon conviction.

The second error assigned, and which was one of the grounds set out in the motion for a new trial, that the court below

erred in refusing to give the second instruction asked by the appellant, as follows: "That, if the jury believe from the evidence, that the killing was accidental, and without any willful and malicious intent, they must acquit the prisoner." From a careful examination of the testimony brought up by the record, we find none to support this instruction. We think the testimony so clearly opposed to the instruction, that it seems that the jury could not have drawn an inference of accident from it, and the only effect the instruction could have had, would have been to mislead the jury. This court held, in the case of *Saddler v. Saddler*, 16 *Ark.*, 628: "That it is error in the court to give an instruction not warranted by the testimony, and which may mislead the jury." *See Worthington v. Card*, 15 *Ark.*, 492.

The third error assigned, (also one of the grounds for the new trial,) is: " That the verdict of the jury is contrary to the first, third and fourth instructions asked by the appellant and given by the court, as follows: 1. That, before the jury can convict the prisoner for murder, they must find from the testimony that the supposed killing was willful and malicious, with malice aforethought. 3. That, although the jury may believe the killing was not accidental, but from criminal negligence, they can not find the prisoner guilty of murder, but only involuntary manslaughter. 4. That, to authorize a conviction for murder in this case, the jury must believe from the evidence that the killing was willful, malicious and with malice aforethought; and, if the jury have a reasonable doubt, they must acquit." We think this question will necessarily be disposed of in discussing the next and only remaining question raised by the motion for a new trial: " That the verdict of the jury is contrary to the law and the evidence."

In discussing this question, it will be observed that, at common law, there was but one degree of the crime of murder; and under our statute the crime of murder consists of two degrees, namely: Murder in the first degree, and murder in the second degree.

The counsel for the appellant insists that, under the statute,

to make a case of murder in the first degree, it must appear to have been premeditated—that is to say, the accused must have meditated upon the act previous to the infliction of the mortal wound, and that it is in this the distinction between the two degrees of murder under the statute exists. We think it will not be disputed that to convict a prisoner of murder in the first degree, on an indictment for murder, the jury must believe from the evidence, beyond a reasonable doubt, the killing was willful, deliberate, malicious and premeditated. To determine, then, whether the verdict of the jury, in the case under consideration, was contrary to the law and the evidence, it will be necessary for us to notice the testimony from which the jury found their verdict, as brought up here by the bill of exceptions.

Mrs. Jane Harrold, the mother of the deceased, testified substantially as follows:   That she was at the house where her son, the deceased, lived, on the first day of August, 1868, in Union county.   That the defendant, George McAdams, came there and said he was waiting for General, the deceased, to pay him, prisoner, for bringing his meal.   He sat a while and bid the witness and family farewell, and started as though he was going to leave, and went to the fence and then came back, and said he would wait for General, and wished he would come; that General Moore, her son, came and went into his house, and came out with his gun, when witness asked him what he was going to do, and he said: " Mother, I'm going to kill some squirrels ; they are eating up my corn." That he, witness' son, set the gun down at the door, and went back in the house to get his squirrel sack, when George, the prisoner, who was about fifteen steps off, ran and took up the gun and pointed it at Harriet, witness' daughter, when General, the deceased, said: "Don't point that gun at her, it is heavily loaded," when the defendant turned the gun on General, and said: "I will shoot you;" then the witness' daughter, Harriet, said: "Don't point that gun at my brother, it is heavily loaded." George, the defendant, put the gun on his shoulder

and started towards the gap, and the deceased after him, reaching out his hands as though he would take hold of the gun, when the defendant looked over his shoulder backwards, and seeing the deceased in the act of taking his gun, the defendant made three or four rapid strides, turning around, taking the gun from his shoulder, saying: "I will shoot you," and presented the gun at him, the deceased, and fired, killing him instantly. Witness knew of no fuss between the deceased and the defendant; they were friendly, as far as witness knew.

Neil Rogers, (colored,) being sworn, testified as follows: I was sent for, to go to the house of aunt Jane, where deceased lived; defendant was at the house when I came to aunt Jane's, about fifteen steps from the door; the deceased came to the door with his gun, and when he, the deceased, got on the steps of the door, he, defendant, came up to him, deceased, and took the gun away from him, and pointed it, the gun, at deceased's sister, and deceased said to him: "That gun is loaded, don't point it at my sister;" when the defendant replied: "Do you take it up? I will shoot you;" and started from deceased and cocked the gun, and turned and shot the deceased; then I walked away. There had been no grudge between the parties that I know of.

The next witness was Dave Robinson, sworn and examined, on the part of the State, who testified as follows: I live in the town of Hillsboro, at the tavern; it was on Saturday evening, and the deceased, General Moore, was in town, and we had knocked off for the evening. The deceased asked me to go down home with him; I did so, to see my wife, Harriet, who lived there, about some flour. When we got to the fence, we met with the defendant, and all three of us engaged in a friendly talk of about five minutes, then we went into the yard where the deceased lived. The deceased went into the house; I sat down by a tree in the yard, near my wife, and engaged in conversation with her; the defendant remained in the yard, about fifteen steps from the door. In about fifteen minutes after going into the house, the deceased came to the

door, with his gun upon his shoulder and his shot bag on, when defendant rushed up to the door, and met deceased upon the bottom step, and asked deceased what he was going to do with the gun? Deceased responded: " I am going to shoot some squirrels, or any thing that will do to eat ;" defendant said: " Let me see this gun," and took the gun from deceased's shoulder and pointed it at deceased's sister, and deceased said: " Don't point that gun at my sister, for it is heavily loaded." Defendant then turned and pointed the gun at the deceased, saying: " I will shoot you." Then the sister of deceased, my wife, said to defendant: " Don't point that gun at my brother, it is heavily loaded ;" then defendant put the gun upon his shoulder and started toward the gap, and deceased followed defendant, with his hands up, reaching like he was trying to turn the gun out of his face, when the defendant, looking back over his shoulder at the deceased, moved quickly two or three steps, turning round, cocking the gun, exclaiming : " I will shoot you, I will shoot you," and fired, killing the deceased instantly. The shot took effect at the lower end of the breast bone, in or near the middle of the chest ; the wound was nearly large enough to run my fist in ; a part of his liver came out at the wound, and was pressed back. This was done in the county of Union, and in the State of Arkansas, on the first day of August, 1868.

William H. Pendleton testified that the defendant was at his mill on the day of the killing, and he heard the defendant make no threats or declarations whatever.

This is all the testimony offered on the trial in the court below. The defendant offered no testimony whatever. From the testimony, we think there can be but little, if any, doubt that the killing of the deceased, General Moore, by the prisoner, George McAdams, was willful, deliberate, malicious and premeditated ; because, after the prisoner pointed the gun first at the deceased's sister, then at the deceased, he put the gun upon his shoulder and started to walk off, giving sufficient time for reflection and deliberation, after making the first at-

tempt and threat, and before making and executing the last, which resulted in the instant death of the deceased.

The counsel for the appellant have argued this cause at great length and with marked ability; but upon the supposition that the words of the statute, "or any other kind of willful, deliberate, malicious, and premeditated killing," requires, in order to make the killing murder in the first degree, that the deliberation and premeditation contemplated by the statute, should be a predetermined intention to kill, fixed in the mind, after a mature reflection and deliberation upon the act of killing. This we can not concede to be the import of the language of the statute. It may be stated as true, that to constitute murder in the first degree, under the statute, the evidence should show such a state of facts as to satisfy the jury, beyond a reasonable doubt, that there was a clearly formed design to kill; a clear intent to take life, without provocation. The witnesses all testify that they knew of no difficulty or dispute between the prisoner and the deceased; but had there been, the testimony shows that there was time reasonably sufficient, after the prisoner pointed the gun at the deceased first, and threatened to shoot him, and the killing, for reflection, and for his reason to have assumed its natural power over him, even if it had been dethroned, temporarily, by heated passion, resulting from personal difficulty. The testimony does show in this case, we think, a state of facts sufficient to have warranted the jury in the belief that the prisoner willfully and deliberately pointed the gun at the deceased with the clear intention of killing him. There is no circumstance connected with the testimony, nor is it claimed, that the prisoner was not sane, or that he was in a frame of mind, from any cause for which he was not immediately responsible, that would prevent him from deliberating and reflecting.

In the case of the *Commonwealth v. Jones*, 1 *Leigh*, (*Va.*,) 612, the court there, in construing their statute, which is similar to ours, as to what constituted murder in the first degree, said, that "other homicides, which were murder at common law,

are now murder in the second degree, except when it shall be proved that the homicide was the result of a willful, deliberate and premeditated killing; and it also follows, of necessity, that when, by the proof, the mind is satisfied that the killing was willful, deliberate and premeditated, such killing must be taken and held to be murder in the first degree."

In the case of *Whitford v. Commonwealth of Va.*, 6 *Randolph*, 721, the court said: "The inquiry, then, always must be, is the killing willful, deliberate and determined upon before the act?" If it is, it proves that degree of malice which places the act in the highest grade of the offense. If a man willfully and deliberately points a gun, or a pistol, which he knows to be loaded with powder and ball, at another's head or heart, fires it and kills him, not having received any provocation from him, surely there is as much malignity in his heart, there is as little excuse for him, and there is evidence of as willful, deliberate and premeditated a purpose to kill, as if he had waylaid him."

In the case of the *Commonwealth of Pennsylvania v. Daugherty*, 1 *Br., appx. XVIII.*, the court said: "Whenever it appears, from the whole evidence, that the crime was, at the moment, deliberately or intentionally executed, the killing is murder in the first degree." In that case the court further said, that "it is sufficient to constitute the crime, if the circumstances of willfulness and deliberation were proven, although they arose and were generated at the period of the transaction." See, also, *Penn v. Louis, Add.*, 283 ; *Respublica v. Mulatto Bob*, 4 *D.*, 146 ; *People v. Nichols*, 34 *Cal.*, 211.

The counsel for the appellant, with equal earnestness and ability, insist that the indictment does not contain the necessary allegations to warrant the conviction of the prisoner of murder in the first degree, under the statute. It is insisted that the indictment should allege that the killing was willful, deliberate, malicious, and premeditated, in addition to malice aforethought. We find that the indictment alleges that the prisoner, "feloniously, willfully, and of his malice aforethought,

did shoot," &c. These allegations we think sufficient to charge murder in the first degree. The terms malice aforethought, deliberation, and premeditation, are synonymous. But does the statute, which makes two degrees of the crime of murder, which at common law constituted but one, change the form of proceeding in murder, or abolish the crime of murder as it existed at common law ? By the 6th section, part 4, article 1, chapter 51, Gould's Digest, it is provided that the crime of murder shall consist of two degrees, namely : Murder in the first degree, and murder in the second degree. Thus we see that murder at common law is still murder in this State ; but constituting two degrees. By the same section of the statute, it is provided, after defining the two degrees of murder, "that the jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree ; but if the accused confess his guilt, the court shall impanel a jury and examine testimony, and the degree of crime shall be found by such jury."

It can not, we think, be seriously contended that the provision of the statute quoted, in the least changes the well recognized common law form of proceeding on indictments for murder; as is seen, it is made the duty of the jury to ascertain the degree of the crime from the testimony ; and an indictment for murder, in form good at common law, will authorize the jury in finding the accused guilty in the first degree, if the testimony is sufficient to warrant such a finding. See *Commonwealth v. Gardner*, 11 *Gray*, (*Mass.*,) 438; *Green v. Commonwealth*, 12 *Allen*, (*Mass.*,) 155.

In the case of *White v. Com.*, 6 *Binn.*, (*Pa.*,) 179, the court held, under a similar statute to ours, that, " in an indictment for murder it is not necessary so to describe the offense as to show whether it be murder of the first or second degree." See *Com. v. Flanagan*, 7 *W. and S.*, 418.

In the case of *Com. v. Joyce, et al.*, 6 *Binn.*, 183, the court said : " Nor is it necessary that an indictment for murder

should charge it to have been committed by a willful, deliberate, and premeditated killing, as expressed in the act of the Assembly."

The only remaining question is, the objection urged by counsel for the appellant, that the court below erred in the conclusion of its voluntary charge to the jury, that they were "both the judges of the law and the facts, and must be responsible for their verdict." This instruction by the court was not objected to by the defendant in the court below.

Still, under the practice, in criminal cases, if there was any doubt about the testimony or the verdict being fully warranted by the evidence, the giving of such an instruction by the court, without any explanation as to whose exposition of the law they should consider as the law, the judgment would be reversed; but, as we have before stated, we think the verdict was fully warranted by the testimony, and that the jury could have paid but little attention to the careless, loose remark of the court.

Judgment affirmed.