KING *v*. STATE.

Opinion delivered February 2, 1901.

MURDER—PREMEDITATION.—Evidence that deceased was killed with an ax, and that defendant confessed that deceased first attacked him, but failed to strike him, and then walked away, with the ax in hand, about sixty feet, when defendant approached him stealthily, seized the ax and slew him, is sufficient proof of premeditation and deliberation to sustain a verdict of guilty of murder in the first degree. (Page 575.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

*C. T. Lindsey* and *Austin Nichols*, for appellant.

*Jeff Davis, Attorney General*, and *Charles Jacobson*, for appellee.

BATTLE, J.    John King was indicted by a grand jury of the Pulaski circuit court for murder in the first degree, committed by unlawfully, wilfully, feloniously, with malice aforethought and with deliberation and premeditation, killing and murdering William Davenport with an ax; and he pleaded not guilty, and was tried and convicted of the degree of homicide charged against him, and was sentenced to be hung.

In the trial of the defendant the wife of deceased testified, substantially, as follows: Her husband died on the 6th of February, 1900. The defendant was at her house on that day and the day before. Her husband owed him thirty cents, and paid him twenty-five cents, and still owed him the remainder. The defendant promised to return the day after this, the 6th of February, 1900, and work for her husband. He did so, and on the morning of that day went to the woods carrying an ax furnished him by the deceased to cut wood. About a half hour after this her husband left her house to hunt his mules. About an hour afterwards, in the absence of her husband, the defendant returned with the ax, and inquired where her husband was. She told him, and he asked her to tell her husband that

he would return on tomorrow to work. In ten or fifteen minutes he left, leaving the ax. In a short time afterwards she became uneasy about her husband, and looked for him, and found him within three or four hundred yards of her house, lying in a thicket, dying. Her husband was nearly blind, but could see well enough to find his mules in the wood and identify them. The defendant had worked for him about two weeks before his death. They were apparently friendly. At the time her husband paid him her husband had four dollars, and she thinks that defendant saw them.

John Fountain testified as follows: He knew the deceased. He went with his wife to the place where he was found in a thicket, dying. He found four wounds on him. There was a "split" across the nose; a deep "gash," three or four inches long, on the back of the head, from which his brains ran out; one across his forehead and temple, and one under his right ear; and all appeared to have been made with an ax.

Bob Jones testified: He was a deputy constable. He was at the Klondyke saloon in Argenta, Ark., and had a conversation with the defendant, in which he (the defendant) said he knew the deceased, "and had been out to his house." Witness offered "to treat the defendant with beer, but he dashed off and got away." Did not let him know that he was an officer.

J. H. Nowlin testified: "I am constable of Big Rock township. I remember the time William Davenport was killed. I received a telephone from Bob Jones, one of my deputies, who had located a man answering the description of the one wanted for killing William Davenport. When I got over in Argenta, Ark., Mr. Walpole and I went in search for defendant. I saw him running and jumping fences, and I went near him and ordered him to stop. I drew a six-shooter, and told him to throw up his hands, which he did, and I arrested him. * * * I then asked him what made him kill William Davenport, and he said, if he had not killed Davenport, he would have killed him. I asked defendant how it happened. Defendant said while he was in the woods Davenport came to him, saying he wanted to see the ax. Defendant handed him the ax, which deceased took and struck at him, and that he dodged the blow,

and Davenport started to leave with the ax in his hand, and that he slipped up behind him, and snatched the ax out of his hand, and struck him on the back of the head, and after he fell that he struck him twice more.   I asked the defendant how far the deceased (Davenport) had gotten from him with the ax before he (defendant) went after him.   Defendant pointed out the distance, which was about sixty or seventy-five feet.   *   *   *   This was at the time of his arrest, and before taking him to jail.   I offered the defendant no inducement to make the confession or a statement made in jail in presence of Sam Speight.   *   *   *   The defendant seemed to be excited, for a large crowd was gathering, and talking of lynching, and I hurried across the river, and put him in jail.   This was after the defendant was first arrested, and made his statement."

Sam Speight testified: "I know the defendant and heard him make the confession to Mr. Nowlin, stating he killed William Davenport in the manner told by Mr. Nowlin, after he got to the county jail."

John King, the defendant, testified: "I am fifteen years old.   I worked for Mr. Davenport two weeks.   On the morning of February 6, 1900, I was at Mr. Davenport's house, and went out to cut wood with an ax, and Mr. Davenport came to where I was working.   I asked him for the nickel which he owed me.   He then cursed me, and asked me to let him see the ax, if it was sharp.   I handed it to him, and the next thing I knew he struck at me with the ax, and I ran out from under it, and dodged around, while he still held the ax on the side of him, and took the ax away from him, and struck him on the back of the head, and he fell, and I struck him twice more. I took the ax back to the house, and went away.   I never told Mr. Bob Jones, the gentleman who testified on the stand, anything whatever, and never saw him before.   I never told Mr. Nowlin anything about slipping up behind Mr. Davenport and snatching the ax and killing him with it.   I did not tell him that I killed him (Mr. Davenport) to keep him from killing me, and that I grabbed the ax while he had it drawn on me.   I was born in Arkansas, October, 1885, and was never in trouble before. I never had any malice against Mr. Davenport.   I never saw any

money or change. Mr. Davenport gave me groceries for my work, and he owed me five cents. While in jail, the officers took me on the gallows, and put a rope around my neck. I refused to make any statements, so they swung me, and then I said what Mr. Constable Nowlin testified to awhile ago, and that was when Sam Speight, Jailer Nowlin and other officers who were unknown to me [were present]."

Nowlin and Speight testified that the confession about which they testified was made before the defendant was taken to the gallows or the rope was put around his neck; that the gallows and rope were used to elicit information about another matter, but not about the killing of Davenport.

It was proved that Davenport was killed in the county of Pulaski and state of Arkansas.

The defendant contends that this evidence was not sufficient to convict him of murder in the first degree. Is it sufficient?

In *Green* v. *State*, 51 Ark. 192, it is said: "In order to constitute the killing of a human being murder in the first degree, there must be a specific intent to take life formed in the mind of the slayer before the act of killing was done. It is not necessary, however, that the intention be conceived for any particular length of time before the killing. It may be formed and deliberately executed in a very brief space of time. If it was the conception of a moment, but the result of deliberation and premeditation, reason being on its throne, it would be sufficient. The law fixes no time in which it must be formed, but leaves its existence as a fact to be determined by the jury from the evidence." *Bivens* v. *State*, 11 Ark. 455; *McAdams* v. *State*, 25 Ark. 405; *McKenzie* v. *State*, 26 Ark. 339; *Fitzpatrick* v. *State*, 37 Ark. 256; *Casat* v. *State*, 40 Ark. 524; *State* v. *Wieners*, 66 Mo. 13; *Com.* v. *Drum*, 58 Pa. St. 9; *People* v. *Majone*, 91 N. Y. 211; Bishop, Crim. Law (7th Ed), § 728; Wharton, Crim. Law (9th Ed.), § 380.

In *Ex parte Brown*, 65 Ala. 446, it is said: "The law has declared, and can declare, no length of time within which the manslayer must deliberate, or premeditate, to raise the offense to the highest grade of homicide, murder in the first

degree. If the mind reasons about or resolves upon the act before committing it, or if the purpose be formed, no matter for how brief a period, on an event then future, or on a contingency that may happen, to use a deadly weapon, this is deliberation, premeditation; and a homicide committed pursuant thereto is murder in the first degree."

In *State* v. *Wieners*, 66 Mo. 27, it is said: "A purpose to kill may be conceived and deliberately executed, although but a very brief time elapse between the conception and the execution of the purpose. Deliberation does not mean brooded over, considered, reflected upon for a week, a day or an hour, but it means an intent to kill, executed by the party, not under the influence of a violent passion suddenly aroused, amounting to a temporary dethronement of reason, but in the furtherance of a formed design, to gratify a feeling of revenge or to accomplish some other unlawful purpose."

In the case before us the evidence was sufficient to prove that William Davenport, the deceased, was killed with an ax; and a part of it tended to prove that the defendant confessed that the deceased first attacked him with an ax but failed to strike him; and then walked away, with the ax in his hand, about sixty or seventy-five feet, when he, the defendant, approached him stealthily, seized the ax, took it from his hand, and slew him. These acts were evidence of a brief premeditation and deliberation. They show that he conceived the intent to kill; determined to kill with the ax; resolved how he would get possession of the ax; and, when all this was done, deliberately proceeded to carry his plan into execution by stealthily approaching Davenport and seizing the ax and slaying him. They show a formed design, reason, self-control, premeditation and deliberation—all the essentials of murder in the first degree. This evidence, however unsatisfactory it may be to us, is sufficient to sustain the verdict of the jury in this court.

Judgment affirmed.

BUNN, C. J., dissents as to degree.