## FERGUSON *v.* STATE.

### Opinion delivered October 25, 1909.

1. APPEAL AND ERROR—CONCLUSIVENESS OF JURY'S VERDICT.—A jury's verdict will not be disturbed on appeal if it is sustained by substantial evidence. (Page 124.)

2. HOMICIDE—MURDER IN FIRST DEGREE—INTENT.—In order to constitute the killing of a human being murder in the first degree, there must be

a specific intent to take life formed in the slayer's mind before the killing, but this intent need not be conceived for any particular length of time beforehand. (Page 124.)

3.  TRIAL—ARGUMENT OF COUNSEL—PREJUDICE.—Where evidence of prior contradictory statements of some of the accused's witnesses was introduced, it was not prejudicial error to permit the prosecuting attorney to refer to such contradiction if the court instructed the jury that such contradictory statements could not be considered as tending to establish the guilt or innocence of the accused but only for the purpose of impeaching or discrediting such witnesses. (Page 126.)

Appeal from Howard Circuit Court; *James S. Steel,* Judge; affirmed.

*J. D. Conway* and *W. P. Feazel,* for appellant.

1.  Words do not justify an assault; and where offensive words are resented with an assault, and in repelling such assault the person using the offensive words kills the other, it is not murder. 75 Ark. 249. There must be deliberation and premeditation to constitute murder. 11 Ark. 455; 36 *Id.* 127; 29 *Id.* 585.

2.  The remarks and argument of the State's attorney were highly prejudicial, and should have been excluded from the jury. 76 Ark. 110.

3.  The testimony wholly fails to make a case of murder in the first degree.

*Hal L. Norwood,* Attorney General; *C. A. Cunningham,* Assistant, for appellee; *J. S. Lake* and *George M. Chapline,* of counsel.

1.  The verdict is amply sustained by the evidence.

2.  A person can not take advantage of a provocation invited and brought about by his own unlawful aggression, in order to reduce the grade of the crime, when he has not in good faith attempted to retire from the encounter. 75 Ark. 248.

3.  It is true premeditation to kill must be shown, but it is not necessary to prove this formed design by positive evidence; it may be established by circumstances. 2 Starkie on Ev. 738; 11 Ark. 461; 51 Ark. 189.

4.  A witness may be impeached by showing he has made contradictory statements. Kirby's Dig., § 3138. The argument

of counsel was not objectionable, nor at variance with the legitimate scope of argument. The court especially charged the jury that these arguments went only to the impeachment of the credibility of the witnesses.

FRAUENTHAL, J. The defendant, Butler Ferguson, was indicted by the grand jury of Howard County, charged with the crime of murder in the first degree, by killing Pat Henderson, on the 30th day of May, 1909. Upon his trial, he was convicted by a petit jury of that county of the crime of murder in the first degree; and from the judgment rendered upon that verdict he prosecutes this appeal.

The evidence, on the part of the State, establishes the following facts: The deceased, Pat Henderson, was a young man about 24 years old. On the afternoon of Sunday, May 30, in company with two young men of about the same age, young Henderson went to a creek, a short distance south from the town of Center Point for the purpose of swimming. After going along the creek for some distance, they decided they would not go in swimming because the water was too muddy. They then proceeded across a field towards the public road, and young Henderson was somewhat in the lead and got to the road in advance of his companions. In this road Henderson met two small negro boys, whom he began chasing, and the negro boys became frightened and ran down the road for a distance to a negro church house, before which a crowd of colored people were lingering. In the crowd were Grant Whitmore and Tap Clardy, and the defendant was just across the road and within hearing distance from the crowd. To this crowd the negro boys ran and told them about being chased by the deceased. In a short time after this, the defendant, Grant Whitmore and Tap Clardy, went up this road from the negro church towards where the deceased had chased the negro boys. In the meanwhile, young Henderson, after chasing the negro boys, had returned to his two companions, who by that time had come out of the field into the road; and the three young men sat down on the ground, next the side of the road, and engaged in a friendly conversation. When the defendant, in company with the two parties, who had proceeded from the negro church with him, got to a point in the road about fifty or sixty yards from where young Henderson and

his two companions were seated, next the road, the defendant said: "There sits that God damn Pat Henderson, the God damn son of a bitch! If he does anything to me, I will fix him." Henderson arose from where he was seated and walked in the direction of the defendant, and the defendant continued along the road towards the deceased. Henderson was unarmed, and his hands were extended down by his side. When he came within a few steps of the defendant, Henderson spoke to defendant and said: "Did you call me a God damn son of a bitch?" The defendant immediately drew his pistol and began shooting at Henderson, and saying, "I did." He shot three times in rapid succession, and as Henderson was falling he shot twice more; and then the defendant whirled around and ran back towards the negro church. When Henderson walked towards the defendant and spoke to him, he had nothing in his hands, and at the time defendant shot him he was a few steps from the defendant, and was making no demonstration of any kind. There was testimony showing that the deceased and his two companions had drank some diluted alcohol a few hours before the killing, but the young men testified that it was not sufficient to affect them, and that they were not affected thereby.

The defendant and his two friends testified that when the deceased approached he had a stick in his hand and struck defendant with it, and that he was backing when he pulled his pistol and shot the deceased, firing five times. There was testimony showing that the defendant and his two friends did not state that the deceased had a stick or had struck him with a stick, when they first narrated the circumstances of the killing; and there was other testimony contradicting the defendant and his two friends in their statements made upon the trial as to the manner and circumstances of the killing.

But the two young companions of the deceased, who, at the time of the killing were only a few steps distant, testified that the deceased did not have a stick, and that when he was shot his hands were empty and extended by his side, and that the deceased was making no demonstration when he was shot. Before the jury these witnesses appeared, and the jury were the judges of their credibility. The defendant and his two friends gave their testimony before the jury, and in the light of their demeanor on

the stand and in the light of all evidence in the case the jury were the judges to determine whether their statements were true or only made to shield the defendant from a punishment for the perpetration of a great crime. It was peculiarly the province of the jury to determine the facts of this case. And it has been uniformly held by this court that if there is substantial evidence to sustain the findings of the jury as to the questions of fact, its verdict will not be disturbed. *Hubbard* v. *State,* 10 Ark. 378; *Chitwood* v. *State,* 18 Ark. 453; *Floyd* v. *State,* 12 Ark. 43; *Glory* v. *State,* 13 Ark. 236; *Dixon* v. *State,* 22 Ark. 213; *Harris* v. *State,* 31 Ark. 196; *McCoy* v. *State,* 46 Ark. 141; *Holt* v. *State,* 47 Ark. 196; *Williams* v. *State,* 50 Ark. 511. We have carefully examined the testimony in this case, and find that there is ample evidence to sustain the jury in finding the facts of the case to be as they were detailed by the State's witnesses; and it is upon these findings that the verdict of murder in the first degree must necessarily be based.

It is urged by learned counsel for the defendant that the evidence on the part of the State is not sufficient to sustain the verdict of the jury, convicting the defendant of murder in the first degree. The statute of the State provides: Kirby's Dig., § 1766. "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of, or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree."

SEC. 1767. "All other murder shall be deemed murder in the second degree."

When the fact of death alone is proved, the presumption is that the crime is murder in the second degree; and, before it can be determined that the crime is murder in the first degre, it is incumbent on the prosecution to prove further, by evidence, that the killing was done with premeditation and deliberation. The premeditation can not be inferred from the fact of death, but there must be evidence of a prior intention to do the act of killing in question. But it has been universally held that it is not necessary that this intention be conceived for any particular period of time. As is said by Judge BATTLE in the case of *Green* v.

*State,* 51 Ark. 189: "In order to constitute the killing of a human being murder in the first degree, there must be a specific intent to take life formed in the mind of the slayer before the act of killing was done. It is not necessary, however, that the intention be conceived for any particular length of time before the killing. It may be formed and deliberately executed in a brief space of time. If it was the conception of a moment, but the result of deliberation and premeditation, reason being on its throne, it would be sufficient. The law fixes no time in which it must be formed, but leaves its existence as a fact to be determined by the jury from the evidence." *Bivens* v. *State,* 11 Ark. 455; *McAdams* v. *State,* 25 Ark. 405; *McKenzie* v. *State,* 26 Ark. 339; *Fitzpatrick* v. *State,* 37 Ark. 256; *Casat* v. *State,* 40 Ark. 524; *King* v. *State,* 68 Ark. 572; Wharton on Homicide (3d Ed.) § 152; Bishop on Criminal Law (7th Ed.) 728; *People* v. *Cornetti,* 92 N. Y. 85. The proof advanced in the case must be sufficient to satisfy the minds of the jury that the killing was wilful, deliberate, malicious and premeditated. But it is not necessary to show a specific motive or even a deep-seated ill-will. The will of man acts under a variety of motives, and varies with the man. One may be actuated by a deep-seated ill-will. Another by a general intent to violate the law, no matter on whom the consequences may fall. Another may labor under a sense of a wrong or some indignity, real or fancied. But if he deliberately kills the person by whom he supposes himself to be aggrieved, or by whom he thinks some indignity has been done to another in whom he may take an interest, he is guilty of murder in the first degree, if the act was done with the premeditated design to kill. The motive may be inadequate or comparatively trivial, or the act may be done through a feeling of resentment, no matter how groundlessly it may be based, still if the killing, by whatever of these motives it may be actuated, is done with deliberation and after premeditation, it is murder in the first degree. 1 Wharton's Criminal Law (10th Ed.) § 121. Whether the defendant was incensed by having just heard that the deceased had chased the two negro boys, in whom he may have felt an interest, or whether he had a resentment against deceased, caused by reason of some fancied grievance, or whether he was bent on doing generally an unlawful act, fall the consequences

where they might, the evidence on the part of the State shows that he did the killing deliberately and after premeditation, and without provocation. Just before reaching the deceased, he spoke to him in a violent manner, applying to his name a vile epithet, and then spoke of "fixing him"—and at the time he was armed with a deadly weapon. Here was evidence of malice and of premeditation, and when in a few moments thereafter the deceased, without making any demonstration, accosted him, the defendant immediately fired at him, with an expression of words, showing his design to kill was fixed; and, although the deceased was several steps away and wholly unarmed, and made no demonstration, the defendant fired several shots and continued to fire after the deceased was falling. The jury was justified, from this evidence, in finding that the killing was wilful, malicious and deliberate.

Where there is substantial evidence to support the verdict, so that it can not be said to be without evidence in any essential ingredient to the finding, the verdict should be permitted to stand. *Bivens* v. *State,* 11 Ark. 455; *Stanton* v. *State,* 13 Ark. 319; *Richardson* v. *State,* 47 Ark. 562; *Dow* v. *State,* 77 Ark. 464; Wharton on Homicide (3d Ed.) 156.

It is urged by counsel for defendant that error was committed by the trial court in permitting certain remarks to be made by the attorney on behalf of the prosecution, in his argument to the jury. The State, by way of rebuttal, had introduced testimony showing that certain witnesses who had testified on behalf of the defendant had made statements different from those which they made on the witness stand. The State's attorney, in his argument, spoke of these contradictory statements made by these witnesses prior to the trial. Upon objection being made to the character of the argument, the court told the jury that such previous statements could only be considered for the purpose of impeaching the credibility of the witnesses, and that all remarks of the attorneys relative to said statements, except that going to impeach the credibility of the witnesses, were excluded. The State's attorney thereupon said to the jury that the remarks in his argument were only made "for the purpose of considering the truthfulness or untruthfulness of the statements of the witnesses." From this the jury fully understood that the previous statements

of the witnesses could not be considered by them as substantive evidence of any fact in the case, but only for the purpose of impeaching the witnesses. Such argument for that purpose was warranted by the law, and with the statement and admonition of the court, made to the jury at the time, we do not think an undue advantage was secured by the argument which has worked a prejudice to the defendant. In addition to this, the court specifically instructed the jury relative to the testimony of these impeaching witnesses, as follows:

"10. You are instructed that the testimony of Jeff Reese and —— Woodruff as to the statements made to them by the witness Grant Whitmore as to how the killing occurred can only be considered by you for the purpose of impeaching or discrediting the testimony given by said witness on the stand. This testimony can not be considered by you as tending to establish the guilt or innocence of the defendant.

"11. You are instructed that the testimony of Lee Garner and —— Stuart, as to the statements made to them, or either of them, by the witness John Ferguson, as to what he saw or heard of the killing, can only be considered by you for the purpose of impeaching or discrediting the testimony given by said witness while on the stand. His statements to them can not be considered by you as tending to establish the guilt or innocence of the accused."

We do not think, therefore, that the verdict of the jury should be set aside or the punishment reduced by reason of the remarks of the attorney on behalf of the State. *Redd* v. *State*, 65 Ark. 475; *Kansas City Southern Ry. Co.* v. *Murphy*, 74 Ark. 256; *Noble* v. *State*, 75 Ark. 246.

There is no special instruction mentioned by counsel for appellant in their brief which they claim it was error to have given or to have refused. We have carefully examined all the instructions given by the court and all those that were refused, and in none of its rulings relative to these instructions do we find that any error was committed. The court fully and fairly instructed the jury on every phase of the case, and in those instructions presented every privilege and guarded every right that the defendant was entitled to.

The defendant has had the aid of able counsel; he has had a full and fair trial before a jury of the country; that jury has

declared, by its verdict, that he is guilty of the crime of murder
in the first degree; and we find that there is ample evidence to
sustain that verdict.

The judgment of the Howard Circuit Court herein is af-
firmed.