4497                                    210 S. W. 2d 909

Opinion delivered May 10, 1948.

*Shaver, Stewart & Jones* and *Bert B. Larey,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

SMITH, J.   Appellant was put to trial under an information charging him with the crime of murder in the first degree, alleged to have been committed by shooting and killing one Andrew A. Ellis.   A verdict was returned finding him guilty of murder in the second degree, and fixing his punishment at twenty-one years in the peniten-

tiary, and from the judgment pronounced on that verdict is this appeal.

Many exceptions were saved during the progress of the trial, but the only one seriously insisted upon for the reversal of the judgment is that the testimony is insufficient to sustain the verdict or to warrant a conviction of any higher degree of homicide than voluntary manslaughter, and we are asked to reduce the punishment accordingly. Our authority to grant this relief in a proper case was recognized in the case of *Blake* v. *State,* 186 Ark. 77, 52 S. W. 2d 644, and in numerous cases there cited to the same effect. The testimony is sharply conflicting in many essential respects as several, at least, of the witnesses were partisans of the State or of the appellant, but we must of course give the testimony tending to support the verdict its highest probative value.

There was operated near the City of Texarkana, a beer and dance hall, where appellant had been employed for five months before the killing. He was armed with both a pistol, which he carried in a holster, and a black-jack, which he carried in his pocket. No authority for wearing these weapons was shown, or claimed, and their ostensible purpose was to preserve order in the dance hall.

Deceased escorted a young woman to the dance hall on the night of the killing and they, as well as appellant, appeared to be drinking beer rather freely before the altercation arose which terminated in the killing. About midnight, when the beer had begun to have its effect, two young women began to dance what several witnesses referred to as a vulgar dance. Another young woman who took up the tickets, went to the dancing couple and ordered them to desist. The order was not obeyed and an argument arose, hearing which the deceased made himself a party to the controversy, and as the argument became more acrimonious, appellant appeared and ordered deceased to sit down. Appellant was knocked down and the testimony is in dispute as to whether deceased knocked him down with a beer bottle or with his fist, but it is not questioned that he did knock appellant down.

The proprietor appeared and a scuffle ensued in which proprietor, appellant and deceased were all piled up on the floor. According to appellant he was knocked down a second time and his blackjack taken out of his pocket, and he was beaten in the face with it. The proprietor testified that he too was knocked down by the deceased, who was shown to be a large and very powerful young man, and while he was in the pile on the floor, deceased beat the proprietor with a blackjack. Witnesses for the State testified that they saw no use made of the blackjack.

The combatants were finally separated and when appellant arose he drew his pistol and began firing it. The first shot does not appear to have been directed at anyone. When deceased saw appellant's pistol he began to retreat, according to the State's testimony, and as appellant advanced, deceased raised his hands and said several times "Don't shoot," during all of which time he was backing towards the wall of the building.

The insistence for the modification of the judgment is that the recited testimony shows a killing in the heat of a sudden passion induced by provocation apparently irresistible and without cooling time. The parties were strangers to each other prior to the time of the killing.

Instructions were given to which no exceptions were saved, and no objections are urged. In one of these instructions the offense of voluntary manslaughter was clearly defined, to which instruction the court added the following modification:

"The instruction which I have just given you, however, is subject to this exception: If you find from the evidence beyond a reasonable doubt that the defendant maliciously and without any reason or justification himself provoked and was the aggressor in the difficulty which he had with the deceased Ellis, then the fact that the deceased may have inflicted a blow or blows on the defendant which aroused in him an apparently irresistible passion and that as a result of such passion the defendant killed the deceased, the grade of the offense would not be reduced from murder to manslaughter."

The testimony shows without dispute that appellant was knocked down and according to his testimony this was done with a beer bottle, although witnesses for the State testified that they saw no bottle, and thereafter one event followed another in such rapid succession that there did not exist what in law is called cooling time, that is, time for reflection and for recovering from a passion suddenly aroused caused by provocation which apparently made the passion and the impulse to kill irresistible.

The statute (§ 2981, Pope's Digest) provides that, "Manslaughter must be voluntary, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible," and but for this passion which evidently existed, appellant would have been guilty of the highest degree of homicide, as the testimony shows that when appellant was extricated from the pile of men on the floor, he drew his gun and began firing. The first shot was apparently not fired at anyone, but two others were, and with a deadly accurate aim, during which time appellant was advancing on deceased who was retreating towards the wall of the room, with his hands uplifted saying, "Don't shoot, don't shoot." Nevertheless, the regard of the law for human frailty is such that the degree of the homicide would be reduced from murder to manslaughter, although at the instant of firing the fatal shots appellant was in no danger and was then the aggressor, because of the sudden heat of passion caused by the provocation apparently sufficient to be irresistible and the jury was so advised, provided, as stated in the modification or addition to the instruction above copied, appellant had not been the aggressor, thereby provoking the provocation which aroused the irresistible passion. In other words, one cannot by his own aggression provoke an assault upon himself, and then be heard to say that cooling time was not afforded. In the case of *Noble* v. *State*, 75 Ark. 246, 87 S. W. 120, Justice McCulloch said:

"A person cannot take advantage of a provocation invited and brought about by his own unlawful aggres-

sion, in order to reduce the grade of his crime from murder to manslaughter, when he has not in good faith attempted to retire from the encounter. If appellant was the aggressor in the first difficulty, and was assaulted and cut by deceased while so engaged, and killed deceased upon a sudden heat of passion aroused by the assault made by deceased, the grade of his offense was not thereby reduced to manslaughter. This is because malice, which is an essential element of murder, is implied from the fact that he sought the difficulty in which provocation for passion was given, and became the aggressor therein.''

The testimony is conflicting as to who was the aggressor at the inception of the trouble. There was an argument, no doubt somewhat heated, before appellant became a participant, but there had been no violence until appellant appeared on the scene. There is testimony on the part of the State to the effect that appellant precipitated the fight by striking deceased, and if so he was the aggressor in the general fight in which he was knocked down, and became so infuriated that the passion was irresistible.

The testimony shows that appellant was drinking beer, as were many others in the dance hall, and while it was not shown that he was drunk, the jury may have believed that he was in a condition to join in the quarrel, without invitation or necessity, and that by striking the deceased he ignited the argument into a fight in which he was knocked down and thrown into a sudden heat of passion which he was unable to control, lacking cooling time. If so, the grade of the homicide was not reduced by his towering rage, and the judgment must be affirmed.