BLY *v.* STATE.

4514                                    214 S. W. 2d 77

Opinion delivered October 4, 1948.

Rehearing denied November 8, 1948.

860

*Linus A. Williams* and *J. H. Brock,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice.    From a conviction of second degree murder and a prison sentence of five years, there is this appeal.    The motion for new trial contains 21 assignments, which we group and discuss in convenient topic headings.

I. · *Sufficiency of the Evidence to Sustain Second Degree Murder or Any Other Conviction.*    Assignments 1, 2, 3, 4, and 5 present various phases of this topic. Viewed in the light most favorable to the State, as we do in appeals by the defendants,[1] the facts reflect that the defendant, Jack Bly, aged 86, and Richard A. McAnally, aged about 47, were engaged in drinking intoxicants in Bly's cabin.    The drinking commenced on Friday afternoon; and McAnally slept in the cabin with Bly that night.    Saturday morning, McAnally, after obtaining more whiskey, returned to Bly's cabin.    About noon Saturday, McAnally, while eating at the table, cursed Bly, who became so enraged that he attacked McAnally with a knife and killed him by severing his jugular vein.    The

---

[1] *Coffer* v. *State,* 211 Ark. 1010, 204 S. W. 2d 376; *Powell* v. *State, ante,* p. 442, 210 S. W. 2d 909.    Other cases on this point are collected in West's Arkansas Digest, "Criminal Law," Key No. 1144 (13).

defendant admitted that he inflicted the wound which caused McAnally's death, but claimed: (1) that he acted in necessary self-defense, and (2) that in all events the crime was only manslaughter since—as he urged—there was absent the ingredient of *malice,* which is essential to second degree murder.

The plea of self-defense presented a factual issue on which the testimony was in sharp dispute. There is ample evidence to sustain the conviction against the plea of self-defense. We come, then, to the contention that there was no malice. It is true that the distinction between murder in the second degree and manslaughter is the presence of malice, express or implied. In the case of *Townsend* v. *State,*[2] 174 Ark. 1180, 298 S. W. 3, Chief Justice HART, speaking for the Court, used this language:

"Whether an offense is murder in the second degree or manslaughter depends upon the presence or absence of malice which may be expressed or implied. The law implies malice where there is a killing with a deadly weapon and no circumstances of mitigation, justification, or excuse appear at the time of the killing. Inasmuch as no one can look into the mind of another, much latitude is allowed in the introduction of testimony on the question of motive, and the only way to decide upon the mental condition (intention) of the accused at the time of the killing is to judge it from the attendant circumstances."

If the jury disbelieved—as it evidently did—the defendant's plea of self-defense, then the killing was without sufficient justification. It was done with a deadly weapon, a knife; and the law will imply malice when the killing is without provocation and is done with a deadly weapon. *Webb* v. *State,* 150 Ark. 75, 233 S. W. 806; *McAdams* v. *State,* 25 Ark. 405; *Vance* v. *State,* 70 Ark. 272, 68 S. W. 37. The last cited case also holds that mere words used by the deceased, however abusive and violent, are not sufficient to reduce the grade of the homicide from murder to manslaughter. We conclude that the

[2] Only the memorandum appears in the Arkansas Reports. Full opinion in Southwestern Reporter.

evidence is sufficient to sustain the conviction of second-degree murder.

II. *Admission of Certain Evidence.* Assignments 16 to 21, inclusive, question various rulings made by the trial court in permitting witnesses for the State to testify.

(a) The mortician who prepared the body of the deceased for burial was permitted to testify that he found no weapon of any kind in the clothes of the deceased. It was shown that the body had not been disturbed from the time of the killing until taken in charge by the mortician; so the questioned evidence was admissible as against the general objection offered.

(b) Law enforcement officers were permitted to testify on direct examination as to statements made by the defendant after he was arrested. Then, on rebuttal, the officers were permitted to testify that the defendant did not tell the witnesses that the killing was done in self-defense. There was no error in admitting any of this testimony because the evidence shows that the defendant was freely and voluntarily talking to the officers; and we have repeatedly held that such statements, freely and voluntarily made, are admissible. *Bates* v. *State,* 210 Ark. 1014, 198 S. W. 2d 850; *Thomas* v. *State,* 210 Ark. 398, 196 S. W. 2d 486.

III. *Instructions Given and Refused.* Assignments 7 to 15, inclusive, question various instructions given by the court, and assignment 6 relates to the court's refusal to give the defendant's instruction "A." The court gave 46 instructions which covered all phases of the law under the evidence presented. We find these instructions to be correct as against the general objections offered to each such instruction. Furthermore, the defendant's instruction "A," insofar as it was a correct declaration of the law, was fully covered in the other instructions given so that there was no error in refusing it.

The judgment of the Circuit Court is in all things affirmed.