## JACKSON *v.* STATE.

### Opinion delivered April 1, 1918.

1. HOMICIDE—PREMEDITATION—IDEA FORMED, WHEN.—The premeditation and deliberation to do murder may be formulated in the assailant's mind upon the instant; it does not have to exist in the mind an appreciable length of time. It is only necessary that it exist when the assailant commits the act.

2. HOMICIDE — MALICE — INTENTIONAL KILLING. — Where appellant sought admission to a house, and being denied he shot and killed the person refusing him entrance, malice may be implied from the killing under those circumstances.

3. HOMICIDE—AGGRESSOR MAY PLEAD SELF-DEFENSE, WHEN.—As a matter of law, an aggressor in a difficulty may avail himself of the right of self-defense if, during the progress of the difficulty, he in good faith attempts to retire from the conflict, but while so retiring is pursued and his life endangered to the extent that it is necessary for him to take the life of his adversary in order to save his own.

Appeal from Ouachita Circuit Court; *C. W. Smith,* Judge; reversed.

*J. W. Warren,* for appellant.

1. No premeditation or malice is proven.

2. The question of self-defense was not submitted to the jury, and there was error in the court's instructions 6 and 7.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The evidence is sufficient to prove malice and premeditation. Kirby's Digest, §1764; 92 Ark. 120; 100 *Id.* 330; 86 *Id.* 160.

2. There is no error in instructions 6 and 7. The objections were general and they state the law. 95 Ark. 107; 73 *Id.* 320. No special request for further instructions was made. 102 *Id.* 588; 86 *Id.* 456; 75 *Id.* 373; 77 *Id.* 455.

HUMPHREYS, J. Appellant was indicted, tried and convicted of murder in the first degree in the Ouachita circuit court for killing Lillie Mitchell, from which judgment of conviction an appeal has been prosecuted to this court.

It is contended by appellant that there is no evidence in the record showing three necessary elements of murder in the first degree: Malice, premeditation and deliberation. The substance of the evidence is as follows: Appellant had lived with Classie Specks as his wife since sometime in 1914. They frequently ceased to live together, for only short periods. She was a step-daughter of Tom Dennis, with whom she was residing in Reader a short time before the killing. She had possession of appellant's personal belongings. A short time prior to the killing, appellant visited Classie and remained in the home of Dennis for about two days. He procured a house and made his arrangements to go into the restaurant business with Classie. He went back to the Dennis home with a view to moving his things over to the house he had gotten. Dennis objected to his moving the things, which resulted in a general quarrel and an assault on appellant by Dennis. During the difficulty, Dennis got his gun and threatened to kill appellant, but some one took the gun away from him and put it in the loft of Lillie Mitchell's house, next door to the Dennis house. Appellant then left but returned to the Mitchell house that night and heard Dennis say what he would do to appellant if he came there again. Appellant

thereupon decided to fix himself when he went back again,
and borrowed a gun to take with him. He then arranged,
on the next day, by note, with Lillie Mitchell, who lived
next door to Dennis, to meet Classie at her house on the
next morning after Dennis and the others had gone to
work. In accordance with the arrangement, he went to
the Mitchell house, and, in keeping with his plan to go
"fixed," he took the borrowed gun. He first went to the
Dennis, and then to the Mitchell house.

Classie Specks testified that when she went over to
Lillie Mitchell's house, Lillie put her in a closet before
appellant got there; that she heard Lillie tell John Jack-
son not to come in and then heard a gun shoot.

J. N. Wilson, who found appellant hiding in a thicket
in the afternoon after the killing and arrested him, testi-
fied that appellant told him that the negroes were trying
to ruin his home and that he wanted to kill old Tom Den-
nis, his wife, Classie and any other dam negro that fooled
with him.

E. P. Ellis testified that appellant stated to him that
Lillie Mitchell came to the door and told him not to come
in, and that he got back with his gun and shot her; and
also stated that he never gave white people any trouble,
but that he was "hell among the negroes."

Appellant testified as follows concerning the imme-
diate occurrence: "I first went to Tom Dennis' home and
saw Tom Taylor go in a side room with a gun. I went
over to Frisky's (Lillie Mitchell's) house. I saw Classie
going over there. I went to walk up on the gallery. I
didn't see anybody and I walked in at the door and as I
came in at the door Frisky come out of the door into the
middle of the room and said, 'Don't you come in the
house,' and at the time she was talking she reached back;
I jumped back and as I did I heard a gun snap, and I
looked around when I got into the yard and she had the
gun drawn. I just raised my gun and fired as I thought
she was going to shoot me. I didn't intend to hurt her
and would not have done it for a thousand dollars but
when she did that I fired the gun." He also testified that

he had been told that Lillie Mitchell had it in for him on account of what he had said to her sister about her and Tom Dennis. He was asked the following question, and gave the following answer thereto:

"Q. You were not mad when you did that shooting, were you?

"A. No sir, I saw these negroes scattering around there and I didn't know what they were doing."

There was evidence tending to show that an unbreached gun was lying near the door in the same room where deceased was found.

(1-2) The evidence indicated and the jury might well have found that appellant approached the Dennis and Mitchell homes with a deliberate intention to kill any negro that interfered with his plan to see Classie and get his things. It is admitted that Lillie Mitchell thwarted his plan and that he killed her. The premeditation and deliberation to do murder may be formulated in the assailant's mind upon the instant. It does not have to exist in the mind an appreciable length of time. All that is necessary is for it to exist when the assailant commits the act. *Rosemond* v. *State,* 86 Ark. 160; *Ferguson* v. *State,* 92 Ark. 120; *Gilchrist* v. *State,* 100 Ark. 330. If the jury accepted the statement of appellant to Ellis as the true statement concerning the killing, then appellant assailed and killed Lillie Mitchell on slight, if any, provocation, or under circumstances which manifested an abandoned and wicked disposition. The following question was propounded to, and the following answer given, by Ellis:

"Q. Did he (referring to appellant) tell you why he killed her?

"A. He said she come to the door and told him not to come in, and that he got back with his gun and shot her." Malice may be implied from a killing under such circumstances as these. Kirby's Digest, Sec. 1764.

Appellant insists that the court erred in giving instructions Nos. 6 and 7, which are as follows:

6. "You are instructed that if the deceased had reason to believe that she or any one at her home would prob-

ably be attacked, then as a matter of law she had a perfect right to arm herself and prepare not only for her own defense but that of her home and all persons being therein at the time; and if the defendant advanced upon the deceased's home for the purpose of attacking the deceased or any person in her home, the deceased would not be required to retreat but would have a right to stand her ground and repel force with force, and if necessary to prevent herself or any person in her home from receiving great bodily injury at the hands of the defendant, and if you find from the evidence in this case, beyond a reasonable doubt, that the defendant, John Jackson, was entering the home of the deceased, Lillie Mitchell, over the protest of the said Lillie Mitchell, and killed her, the said Lillie Mitchell, as is charged in the indictment, then you will find the defendant guilty.''

7. ''You are instructed that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant provoked the difficulty or began the quarrel with the purpose of taking advantage of the deceased, or any one in the home of the deceased, or taking her life or the life of anyone in the home of the deceased, or doing her or some one in her home some great bodily harm, then there is no self-defense in the case, however imminent the peril of the defendant may have become during the difficulty in consequence of an attack, if any, made upon him by the deceased, and if, in such circumstance, if the jury believed from all the evidence in the case, beyond a reasonable doubt, that the defendant shot and killed the deceased, then the defendant is guilty, and the jury should so find.''

It is said there was no evidence upon which to predicate instruction No. 6 because appellant made no effort to enter the house over the protest of deceased. Appellant is wrong in this contention, for Classie Specks' evidence tends to show that appellant shot deceased when she told him not to come in, and the evidence of E. P. Ellis, to the effect that appellant said that deceased told him not to come in, and that he got back with his gun and shot her,

tends to establish the fact that he was attempting to enter the house over the protest of deceased, and there are other facts and circumstances in the evidence recited above which tend to establish the same thing.

It is suggested that there is not a word of testimony to the effect that appellant began any difficulty or provoked any quarrel and for that reason the court erred in predicating instruction No. 7 upon that assumption. Again we think learned counsel for appellant is mistaken, for the evidence tended to show that he shot her on account of a simple request made by Lillie Mitchell not to enter her home. This would clearly be starting a difficulty on appellant's part.

(3.)  Again, it is urged that instruction No. 7 is inherently wrong because it totally ignored appellant's theory that he attempted in good faith to retire from the conflict and avoid the necessity of killing deceased, but that he was forced to kill her in necessary self-defense. It is true, as a matter of law, that even an aggressor in a difficulty may avail himself of the right of self-defense if, during the progress of the difficulty, he in good faith attempts to retire from the conflict but, while so retiring, he is pursued and his life endangered to the extent that it is necessary for him to take the life of his adversary in order to save his own. Appellant gave testimony to the effect that, after or about the time he entered the house, Lillie Mitchell ordered him not to enter; that she reached behind her skirt and got a single-barreled gun; that he jumped back on the ground and heard the gun snap and when he looked around she had the gun drawn; that he thought she was going to shoot him and raised his gun and fired; that he did not intend to hurt her and would not have done it for a thousand dollars. This evidence was a basis for an instruction on necessary self-defense and any instruction which ignored or precluded this right to defendant was inherently wrong. We think that instruction No. 7 was erroneous for the reason that it wholly ignored appellant's right to plead necessary self-defense, if it be true, as he testified, that he attempted to retire

from the difficulty in good faith and not for the purpose of gaining an advantage over deceased.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.