HANNAH *v.* STATE.

Opinion delivered May 25, 1931.

*J. D. Shackleford*, for appellant.

*Hal L. Norwood*, Attorney General, and *Robert F. Smith*, Assistant, for appellee.

BUTLER, J. Appellant was convicted in the court below for the crime of murder in the first degree, and sentenced to imprisonment for life, from which verdict and judgment he has appealed. Appellant has assigned as error the insufficiency of the evidence to sustain the verdict, errors of the trial court in its failure to quash the indictment returned by the grand jury and in the selection of the petit jury, and in its refusal to give instruction No. 2, requested by the appellant, and in permitting the clothing of the deceased to be exhibited to the jury.

The testimony tended to establish the following state of facts: H. C. Van Dyke, the deceased, was a barber about sixty-three years of age whose home was in Kosciusko, Mississippi. A few days prior to the third day of January, 1931, he disappeared from Kosciusko and was discovered dead by the highway near Malvern with his head almost severed from his body, his pockets turned wrong side out, his shoes partly unfastened and his socks pulled down over the tops of his shoes. His body was identified by a card found on his person with his name and address thereon, and an investigation was made which resulted in the discovery of the car in which he had been traveling on the highway near Kosciusko with two flat tires and without any gasoline. Shortly after this the defendant was arrested. It was then discovered that the defendant had been employed by Van Dyke, on or about the Sunday preceding the discovery of the latter's body, to accompany Van Dyke on a trip through western Tennessee into Arkansas as the driver of the car; that at about the point where Van Dyke's

body was discovered the car was stopped for some purpose, and there Van Dyke had been killed by the defendant. When first arrested, the defendant denied knowing Van Dyke or ever having been in his company. Within a short time after this, however, he admitted that he had left Kosciusko with Van Dyke, but denied having killed him, and stated that Van Dyke had been attacked by some unknown persons, and that he had left in the car during the rencounter. In another statement made soon thereafter to the officers he admitted having killed Van Dyke and gave as a reason that he was defending himself at the time from an attack made on him.

It was shown that Van Dyke, during the journey, had made statements relative to having money in his possession, and a witness testified as to having seen some money under Van Dyke's sock, the witness being able to see sufficiently through the sock to distinguish it as money.

Apparently the first person who reached the scene of the killing after the happening stated that there was only one track or set of footsteps which led from the road to the edge of the embankment where the body lay and around the body and back to center of the road, and at that time the pockets of deceased's clothing were turned wrong side out, and the socks pulled down over the shoes, and that witness remained until the officers arrived when a search was made of the body and nothing of value discovered thereon except a cheap watch worth perhaps $1.50 or $2. Van Dyke had purchased some time in the afternoon or evening preceding the discovery of his body four fifteen cent bottles of vanilla extract, all of which he drank at intervals as he traveled. He was last seen alive about eight o'clock after dark on the evening of the third of January, and his dead body discovered early on the morning of the fourth. The defendant testified that during the night of the homicide Van Dyke had become intoxicated, as he had done frequently during the journey, but that he had shown no evidence of being quarrelsome; that where the killing occurred Van Dyke had the car

stopped and got out on the right and went behind the car, and that defendant got out on the left and told Van Dyke that he was going to leave him there and go no further with him; that Van Dyke told defendant if he tried to do this that he would kill defendant, and started at him with a razor; that he caught Van Dyke's arm and during the struggle he cut Van Dyke's throat because he believed Van Dyke was about to kill him and that he acted in self-defense; that he did not rob Van Dyke of any money, but admitted that he took a number of razors belonging to the dead man and returned with them in Van Dyke's car over the way they had previously come and traded them for gasoline.

The jury evidently did not believe the defendant's testimony, and we think the circumstances abundantly justify them in the conclusion reached that the defendant murdered the deceased and that the motive was robbery.

The grand jury convened, and the indictment in. this case was returned while the defendant was confined in the jail of Hot Spring County, the indictment being returned on the 20th of January, 1931. The record shows that on the 21st of January, 1931, the defendant was arraigned in open court, and at that time was represented by an attorney who entered a plea of not guilty. The case was then continued and set for January 27, 1931, on which day the defendant, by his attorney, filed his motion to quash the indictment the grounds of the motion being that defendant was confined in jail at the time the grand jury was impaneled, that he was a negro, and that there were no negroes on the grand jury, and alleged that the failure to include negroes in the panel was a discrimination against the defendant on account of his race.

The court did not err in overruling this motion. No attempt was made to prove that negroes were excluded from the jury, and that none such had been selected because they were negroes, but the defendant rested on the allegation contained in his motion. This was not sufficient, for the allegation is one of fact, and must be de-

termined as any other fact in the case, and, in the absence of any showing to the contrary, it must be presumed that the jury commissioners made their selection in accordance with law. "The mere absence of negroes from the grand jury cannot of itself be considered as a sufficient showing to sustain the motion to quash. It must appear that the exclusion of negroes from the grand jury was brought about for the purpose solely of denying equal protection of the law to the defendant or his race on account of race or color." *Eastling* v. *State,* 69 Ark. 189, 62 S. W. 584; *Threet* v. *State,* 110 Ark. 152, 161 S. W. 189; *Jordan* v. *State,* 141 Ark. 504, 217 S. W. 788. To support his contention on the motion to quash the appellant has cited the cases of *James* v. *State,* 68 Ark. 464, 60 S. W. 29, and *Mallory* v. *State,* 141 Ark. 496, 217 S. W. 482. We have carefully read these cases, and find nothing in them in conflict with the rule announced above.

After two of the petit jurors had qualified and had been accepted by both the State and the defendant, the court permitted the State to peremptorily challenge them. The defendant made proper objection and exceptions and contends here on the authority of *Brewer* v. *State,* 72 Ark. 145, 78 S. W. 773; *Carr* v. *State,* 81 Ark. 589, 99 S. W. 831; *McGough* v. *State,* 113 Ark. 301, 167 S. W. 857; and *Dewein* v. *State,* 114 Ark. 472, 170 S. W. 582, that this action of the court was prejudicial error. These cases do not support the defendant in his contention, for there is no showing made that at this time the challenges of the defendant had been exhausted. This was a matter within the discretion of the court, and it must be shown that such discretion was abused or that the court acted arbitrarily. Here no such showing is made, and, instead of supporting the contention of the appellant, the cases above cited support the rule here announced.

In *Carr* v. *State, supra,* the court said: "Appellant says that the trial court erred in permitting the State to peremptorily challenge two jurors after they had been

examined and accepted as jurors in the case, but this was not error. It was lawful to do so.'' In *Dewein* v. *State, supra,* the court held that it was not error to permit the State to peremptorily challenge a juror after he had been accepted by both the State and the defendant, when the defendant had not exhausted all his peremptory challenges, and that the court, in the exercise of its discretion could permit the State to peremptorily challenge the juror after he was accepted on the jury. The court there cited *Carr* v. *State* and *McGough* v. *State, supra.*

The correct rule appears to be that, at any time during the impaneling of the jury, where the defendant has not exhausted his peremptory challenges, it is within the discretion of the trial court to permit the State to excuse peremptorily a juror already taken, but that, if the defendant has exhausted his peremptory challenges, the case will be otherwise.

Instruction No. 2, requested by the defendant, submitted to the jury the defendant's theory that he was acting in self-defense, and instructed the jury that he had the right, if attacked by another with a deadly weapon under such circumstances as to make it appear to him that his life was about to be taken, to stand his ground and defend himself. This instruction as drawn is criticized by the State as an inaccurate declaration of law, but, assuming that it was correct. we think there was no error committed in refusing to give it, for the reason that it was fully covered by other instructions given at the request of the defendant.

The last alleged error is the action of the court in permitting the clothing of the deceased to be exhibited to the jury after all of the evidence had been introduced. We have examined the transcript of the evidence, and we find that during the introduction of the testimony on the part of the State the clothing was offered in evidence. The defendant objected to its introduction at that time, and asked that it not be introduced then, stating, ''I have no objection to their being exhibited at a later stage.'' To this the prosecuting attorney assented with

the statement that he would exhibit it later on. Therefore, if this evidence was introduced out of its proper order, it was an error invited by the defendant, of which he cannot now complain. There was a question as to the position in which the deceased was standing at the time he received the death stroke, and the blood on the clothing might have shed light on this question, and therefore the clothing was admissible in evidence.

On the whole case, we find no prejudicial error, and the judgment of the trial court must therefore be affirmed.