McCall v. State.

4942                                    323 S. W. 2d 421

Opinion delivered April 27, 1959.

Lester E. Dole, Jr., for appellant.

Bruce Bennett, Atty. General, by John T. Haskins, Asst. Atty. General, for appellee.

Carleton Harris, Chief Justice. Appellant, Mayso McCall, a Negro man, was charged by Information with the crime of assault with intent to rape, it being alleged that he assaulted Lorraine Tate, an 11 year old Negro girl, on March 27, 1958, with the intent to rape her. On trial, the jury returned a verdict of guilty, and fixed appellant's punishment at 21 years imprisonment in the state penitentiary. Judgment was accordingly entered, and from such judgment comes this appeal.

The proof reflects that Lorraine and her cousin, Willie Flint, Jr., 12 years of age, were walking back to

school during the noon hour, when Lorraine was stopped by McCall (whom she knew as "Jaster"), who asked her for a piece of a sandwich she was eating. She testified that she gave it to Willie, who in turn, gave it to McCall . . . that McCall was standing on the inside of the fence, and called to her "to come over there, and I went to the fence, and he grabbed me." Appellant then took her some distance into the woods. According to Lorraine's evidence, appellant threatened "if I hollered, he'd kill me." She then related that he laid her down on the ground, got on top of her, opened his pants, pulled her panties aside, and endeavored to place his male organ in her; that she could feel it against her body. According to Lorraine's statement, she heard a car stop in the road, and McCall jumped up and ran away. Her mother, step-father, and uncle (who had been summoned by Willie) were in the car. The mother started calling, and the little girl went to her.

Willie testified that he and Lorraine were on their way to school, and McCall "called her to come over there, and he said, 'Don't you know I'm your cousin', and she said, 'No', and he grabbed her and said, 'Don't you start to hollering. If you holler, I'll kill you.'" The witness testified that McCall started pulling Lorraine over the fence, and appellant told him to "go on to the school house, and I started running." Willie ran home, and reported the occurrence to his parents, and his father, uncle, and aunt, went back to the scene in the car.

Further evidence showed that the little girl was scratched from briars and that her coat was muddy across the shoulders and across the bottom. She was taken to a physician, but he was not at home, and an examination by her mother showed no evidence of rape. Granville Warrick, city marshal and deputy sheriff at Bearden, received a call about the incident, and went straight to the scene. He arrived just as the relatives were helping Lorraine over the fence. From the testimony:

"Did you see the defendant, Mayso McCall, there?

A. No, sir, he crossed over the road.

Q. Crossing from what area?

A. Cotton Belt.

Q. Would that be the area where you found the little girl?

A. Directly across the woods, he was still going into the woods the opposite way from where the incident happened.

Q. Did you catch him at that time?

A. No, sir.

Q. Did you attempt to holler at him?

A. No, sir, he was too far away to holler at and I went and got in the car and I called for Mr. Riggs and Mayso stopped at a house and ran into a chicken house and that is where I got him."

Appellant was arrested about two hours after the occurrence, and the Marshal testified McCall was about "two-thirds drunk". The evidence was certainly sufficient, if believed by the jury, to support the conviction.

Appellant testified that he remembered nothing at all that happened on the date of the alleged assault. He stated that he was drinking that day, and knew nothing "until I came to myself in jail." From the evidence: "Q. McCall, did you rape this little girl or try to rape her. A. I don't know anything about it. Q. Are you denying that you did it? A. I don't recall it. Q. You don't know if you did or if you didn't is that what you are saying? A. That is right." He testified that he is subject to epileptic fits, has headaches, and his hands swell, though he did not know whether he had such a spell on the day in question. His grandmother and an acquaintance testified that McCall would have spells, and his hands and limbs would swell.[1]

Appellant argues that he was not allowed to cross-examine these children as to their competency before the

---

[1] Minnie Gloster also testified that she had seen Mayso "have crying spells and tell me his head was hurting" when he was about 6 years of age.

jury, prior to the presentation of the State's evidence in chief, and this deprived him of a legal right. We do not agree. When the State called for Lorraine Tate, appellant's counsel objected to the competency of the witness and requested that she be qualified, whereupon the court retired to Chambers, and the witness was interrogated by the State's attorney. This examination revealed that Lorraine was in the 6th grade at school, had made good grades, had passed each year since entering the 1st grade, that she regularly attended church and Sunday School, had been taught to tell the truth, and knew she would be punished if she did not do so. Appellant's counsel only asked one question of witness. Willie Flint was then examined, and his testimony reflected that he was 12 years of age, in the 5th grade at school, attended the same church and Sunday School as Lorraine (First Baptist), that he had been taught to tell the truth, and that he knew it was wrong to tell a lie. No questions were propounded to him by appellant's counsel. The court then permitted the children to testify. Lorraine was placed on the witness stand before the jury, where substantially the same evidence, as to qualifications, was elicited. When the State's attorney finished this phase of the interrogation, appellant's counsel stated: "Is he through with the qualification? The Court: You can go ahead. Objection is overruled. Appellant's counsel: Save our exceptions." When young Flint was called to the stand, appellant's counsel objected to the competency of the witness, which objection was overruled.

We find no error. The purpose of the examination in Chambers was to determine whether the children were competent to testify, and appellant had every opportunity to interrogate and cross-examine the witnesses at that time. However, only one question was asked of the little girl, and none of the boy. In addition, when the witnesses were turned over to the appellant's counsel for cross-examination before the jury, there was every opportunity to cross-examine the youngsters relative to education, their knowledge of the difference between right and wrong, and any other questions relating to their intelli-

gence or competency; in fact, some few questions were asked. In *Keith* v. *State,* 218 Ark. 174, 235 S. W. 2d 539, this Court said:

"Another well settled rule is that the question of competency is left to the sound discretion of the trial judge and in the absence of clear abuse of the judicial discretion exercised, it is not reviewable upon appeal. *Yother* v. *State,* 167 Ark. 492, 268 S. W. 861. In *Payne* v. *State,* 177 Ark. 413, 6 S. W. 2d 832, the court quoted with approval the following language of Justice BREW-ER, speaking for the court, in *Wheeler* v. *United States,* 159 U. S. 523, 16 S. Ct. 93, 40 L. Ed. 244: 'The decision of this question rests primarily with the trial judge, who sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence as well as his understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review, unless from that which is preserved it is clear that it was erroneous.' "

In the *Yother* case, the court permitted a 10 year old girl to testify; in the *Payne* case, a 7 year old boy was held competent to testify.[2] From an examination of the record, it would appear that both Lorraine and Willie, Jr., were competent and entirely qualified to testify, and certainly we cannot say that the trial judge abused his discretion in so permitting them to testify.

It is next urged that the verdict was excessive. It has already been pointed out that there was substantial and sufficient evidence to support a conviction. The court properly instructed the jury as to the defense of drunkenness, and insanity, and further told the jury that it was their duty to determine the degree of credibility that should be given the testimony of the two child witnesses. McCall was found guilty, and under our holdings,

---

[2]See also ALFORD v. STATE, 182 Ark. 1184, 34 S.W. 2d 224, where a 10 year old girl was held competent to testify; and DURHAM v. STATE, 179 Ark. 507, 16 S.W. 2d 991, where a 6 year old girl, upon whom an assault was alleged to have been committed, was held competent as a witness.

it was within the province of the jury to assess the punishment. As stated in *Turnage* v. *State,* 182 Ark. 74, 30 S. W. 2d 865:

"* * * it was the peculiar province of the jury to fix the punishment in each case, and on appeal this court has no power to reduce it unless for the purpose of eliminating some error committed by the trial court."

No reversible error appearing, the judgment is affirmed.