NAIL *v.* STATE.

4937                                            328 S. W. 2d 836

Opinion delivered November 2, 1959.

[Rehearing denied December 7, 1959]

*John Harris Jones* and *Wilton E. Steed,* for appellant.

*Bruce Bennett,* Atty. General, by *Thorp Thomas* and *Ancil Reed,* Asst. Atty. General, for appellee.

CARLETON HARRIS, Chief Justice. William Frank Nail, appellant herein, was convicted of the crime of Murder in the First Degree, and his punishment fixed at death by electrocution. From the judgment so entered, comes this appeal. Numerous assignments of error are contained in appellant's motion for new trial, the first several dealing with the sufficiency of the evidence.

Proof reflected that Nail, James Moss, and James Leroy Montgomery, were convict trusties at the state penitentiary farm located at Tucker. Nail and Moss were riflemen on the plow squad, and Montgomery was the rider.[1] According to the State's evidence, Nail was fixing the bridle on his horse, and when the horse kept jumping about, he picked up a piece of leather and began hitting the horse with it. Montgomery was sitting on a box, preparing to eat. Rising, and starting toward Nail, he told the latter to quit whipping the horse. Appellant replied that it only concerned him (Nail) and Captain Bruton, and when Montgomery continued walking toward him, appellant drew his pistol. The rider then backed off and stated, "You won't get a chance to pull that pistol on nobody else". According to witness Moss, Montgomery "started to turn and walk off and about that time I heard Frank's rifle go off and he fired the first shot then. * * * Montgomery backed up and I backed up out of the way, too. Montgomery backed up and I walked out of the way and Montgomery run around the other side and Frank fired again. I told Montgomery, I said, 'Montgomery, Frank is mad, you had better leave while you can', I said, 'You had better

---

[1] Riflemen, commonly called "high power", have the duty of guarding the men working under them, known as rank men. They ride a horse, and use a 30-30 high power rifle. The rider is the boss, and directs the rank men in their work. According to evidence by the assistant superintendent at Tucker, the rider carries a pistol when going to and coming from the job, but not when he is with the men.

run, you had better go to the building or do something'.'' Montgomery ran toward the bayou, while Nail mounted his horse, and according to the witness, fired two more shots. Montgomery ran under the bridge at the bayou. Further, from the testimony of Moss: ''Montgomery told him, he said, 'I am not going to the man, I will call it off', something like that, something of that nature, and Frank told him, 'All right, come on out'.'' Montgomery then walked out from under the bridge, holding up his hands, and Nail again fired. Montgomery fell. Other witnesses, in substance, corroborated Moss' testimony. According to witness Jimmy Mullins, Nail ''went down and told him to come out from under the bridge, that he wasn't aiming to hurt him. He finally come out. Q. Did Mr. Montgomery say anything? A. Yes, sir, he come out with his hands up begging. Q. What did he say when he was begging? A. Well, he said he wasn't aiming to tell on him — it was all over with. Q. Then what happened? A. Frank Nail said something, yes, it was over with, and up and shot him.''

According to Dr. Harold Morris, who was acting as coroner of Jefferson County, three bullets struck Montgomery, and he died as a result of such wounds. The proof was undisputed that deceased was unarmed at all times during the altercation. The evidence was certainly sufficient to sustain a first degree murder conviction.

It is urged in assignments Nos. 6 and 7, and objections made during the trial, that the court erred in admitting into evidence certain photographs depicting the scene of the alleged murder. The objection was based on the fact that the scene was not the same as on the day of the killing, in that some equipment and two automobiles were shown in the photographs, which were not so located on the day of the alleged crime. Evidence in the case reflected that the house, road, and bridge, shown in the pictures, were the same as when the shooting took place, and it was stated during the testimony that no automobiles were parked there at the

time. The same contention was made, but rejected by this Court, in *Williams* v. *State,* 229 Ark. 1022, 323 S. W. 2d 922.

By assignment No. 10, and objections made during the trial, appellant claims the court erred in admitting into evidence his confession. Counsel contend that the confession was incomplete, and that Nail lacked the mental capacity to understand the confession. Buck Oliger, a deputy sheriff, who took, and wrote the confession, stated that he included everything that appellant told him at the time of the taking. The confession was taken in question and answer form, signed by Nail, and witnessed by two other persons. If it was felt that Nail had made other statements which did not appear in the confession, counsel were at liberty to question the witness in detail. In fact, the court advised counsel that Oliger could be interrogated about any additional statements made by appellant. This action of the court conformed to our ruling in *Whitten* v. *State,* 222 Ark. 426, 261 S. W. 2d 1. Relative to the contention that Nail lacked mental capacity to understand the confession, it was obviously appellant's duty to offer proof to that effect, and this not having been done, he was in no position to complain.

Assignments Nos. 8 and 9, together with objections during the trial, maintain that error was committed by the court in permitting the State to re-examine certain witnesses, it being contended that the matters under re-examination should have been included on direct examination. The witness Moss was asked if the photographs correctly represented the scene of the homicide at the time it occurred. Since the introduction of the photographs had been objected to on the ground that the scene portrayed was not the same as on the day of the murder, the evidence was proper rebuttal. Oliger was also recalled to testify in regard to taking Nail's confession. We have held that the reopening of a case either for the re-examination of a witness, or the taking of further testimony after testimony on both sides has been concluded, is a matter within the discretion of

the court. *Simmons* v. *State,* 184 Ark. 373, 42 S. W. 2d 549.

Numerous assignments of error deal with the instructions given by the court, and the refusal of the court to give various requested instructions. Appellant specifically objected to the court's instruction No. 12, which reads as follows:

"You are instructed that the premeditation and deliberation to do murder may be formulated in the assailant's mind upon the instant. It does not have to exist in the mind an appreciable length of time. All that is necessary is for it to exist when the assailant commits the act; so if you find from the evidence on the whole case, beyond a reasonable doubt, that William Frank Nail, wilfully, deliberately, maliciously, with premeditation, killed James Leroy Montgomery, then you will find him guilty of murder in the first degree, unless you find the defendant insane as defined in these instructions."

This specific objection was based on the contention that the instruction was in conflict with another instruction dealing with premeditation; that it gives unnecessary emphasis upon a negligible period of time as involved in the element of premeditation, is incompetent in failing to take into consideration the low mentality or mental defectiveness of the accused, and is vague. We find no conflict, nor vagueness, and further find that the instruction correctly states the law in conformity with numerous holdings of this Court, going as far back as 1869. *McAdams* v. *State,* 25 Ark. 405. See also *Jackson* v. *State,* 133 Ark. 321, 202 S. W. 683; *Jenkins* v. *State,* 222 Ark. 511, 261 S. W. 2d 784. As to that part of the objection relating to the failure to include a reference to the alleged low mentality of the accused, suffice it to say that the court's instructions Nos. 14 and 15, given on the court's own motion, properly instructed the jury as to the defense of insanity. Of course, the fact that one is simply of "low mentality", is no legal defense to the commission of crime, unless of such low mentality as to render him incompetent. We have also

examined the other instructions submitted, and find no error therein, nor in the court's refusal to give requested instructions.

By assignment No. 18, appellant contends that the court erred in allowing the jury to separate. Ark. Stats. (1947), § 43-2121, permits this to be done in the discretion of the trial court, and we held in *Borland* v. *State*, 158 Ark. 37, 249 S. W. 591, that this was entirely proper, no abuse of discretion having been shown, and it not appearing that any of the jurors were subject to improper influences during the dispersion of the jury. Likewise, in the instant cause, there is no showing that appellant was prejudiced by the action of the court permitting the jurors to separate. Preceding the separation, the court admonished the jury as follows:

"Now, gentlemen, I want you to remember this distinctly, in all cases when you are permitted to go, the court has confidence in you, we are going to permit you to separate and go to your respective homes — do not discuss this case and do not permit anyone to discuss it with you because that would be highly improper and entirely wrong, and I am sure you will not do that. I want you to bear in mind, keep in mind, what I told you this morning, don't discuss it with anyone. That means what it says, anyone, and do not permit them to discuss it with you — should they mention it to you, tell them you are on the jury and under orders of the court not to discuss it and as I said again this morning, if they insist it, bring it to the court's attention, and we will attend to that. With that, be back in the morning."

There was no request that the jury be admonished not to read newspapers, or listen to radio or television programs, regarding the trial.

It is contended that the trial court erred in denying appellant a new trial on the ground that nine of the jurors had read a newspaper article about the trial. Following an afternoon recess, when the jury had been separated, an account of the day's proceedings was pub-

lished in the Pine Bluff Commercial, and in next morning's Arkansas Gazette. Appellant first complains that the Commercial stated the accused was serving a term for burglary and grand larceny, and the Gazette article stated he was sentenced for grand larceny. Counsel argue that appellant was greatly prejudiced by the fact that members of the jury, in reading the articles, became acquainted with appellant's prior offenses. We do not agree. It necessarily was obvious to all the jurors that Nail had committed some offense, else he would not have been serving time in the penitentiary. If the articles had erroneously stated that Nail was serving time for rape, or some other crime of that nature, which might well tend to arouse prejudice in the mind of a juror, appellant would have a stronger point, but such was not the case. There was perhaps some slight discrepancy in the testimony of Deputy Sheriff Oliger and the written account in one of the newspaper articles, but we fail to see where this could be prejudicial, since the jurors had, at first hand, heard Mr. Oliger testify, and therefore, certainly were acquainted with his actual testimony. Appellant also objects to the lead sentence in the article which states that the accused "went on trial for his life." This was certainly a correct statement, since Nail was being tried for first degree murder. In addition, the court made the following statement to the jury:

"The Court wants to say something to the jury. Is there any of you who read the articles who cannot disregard the articles totally and try this case solely on the law and the testimony you hear here in the court room? The Court saw no hands. The Court is going to further instruct you if you read the articles, those of you who did, the Court is asking you to totally disregard anything you might have read in there and try this case solely on the evidence you heard here yesterday and today and the law as given you by the Court."

Appellant has suggested error on two points that we feel merit detailed discussion. The first of these relates to the dismissal of a juror after the juror had

been accepted, and after appellant had exhausted his challenges. The complete record as to what transpired is as follows:

"Mr. Brockman: At this time, Your Honor, I would like to excuse a juror that has already been taken.

The Court: All right.

Mr. Jones: If the Court please, we want to object to him excusing a juror that has already been taken.

The Court: The objection is overruled.

Mr. Brockman: The state will excuse Mr. McIntyre.

The Court: Mr. McIntyre is excused.

Mr. Jones: Well, note our objection — our objection is under the statute that the defendant is to have the last challenge as to each juror and the state has accepted him.

The Court: Yes, sir, note the objection.

Mr. Jones: Save our exceptions.

Mr. Steed: If the Court please, the defendant would like for the record to show that all of his challenges had been exhausted.

The Court: The Court has a record of them."

Appellant argues that the court committed reversible error in permitting the State to challenge this previously accepted juror after the defendant had exhausted his challenges. In *Williams* v. *State,* 63 Ark. 527, 39 S. W. 709, this Court did hold such action to be prejudicial error, though a strong dissent was written by Mr. Justice RIDDICK. Under the *Williams* case, appellant's contention would be correct, and he would be entitled to a reversal herein. However, the latest case dealing with point is *Green* v. *State,* 223 Ark. 761, 270 S. W. 2d 895, which was handed down on June 7, 1954, and rehearing denied on October 4, 1954. There, a juror was accepted

by each side, but was later excused by the Court through fear that ineligibility might be assigned as error.[2] In an Opinion written by the late Chief Justice GRIFFIN SMITH, this Court said:

"Assuming, without deciding, that the disqualification could be waived, appellant has failed to show that he was prejudiced by the ruling. Insistence is that when the juror was removed, the defendant had exhausted his challenges. He does not, however, show that the person accepted in lieu of Baker was objectionable, or that the court on request would not have excused a questioned substitute under a rule of fairness if the person objected to could with reason be regarded as unfit, or favorable to the state's view of the transaction. We have often said that a litigant is not entitled to a particular juror."

Of course, in the *Green* case, *supra,* the juror was excused on the court's own motion, while here, the juror was excused at the request of the state's attorney. We see no material difference however, since this juror was actually excused by the court, and had the court refused its permission, the juror would have continued to serve. We recognize that these decisions are conflicting, but the *Green* case, of course, being the latest pronouncement upon this point, constitutes the law, and this construction has been in effect for more than five years. Actually, the *Green* case overruled the *Williams* case though the Opinion did not specifically so state. We therefore take this occasion to point out our adherence to the *Green* decision. As pointed out in that case, we have frequently held that a litigant is not entitled to a particular juror. This being true, there is no valid reason to refuse the request to excuse one who has already been taken, even though a defendant's challenges have been exhausted, *unless it first be shown that the defendant will be prejudiced by the service of the venireman accepted in lieu of the juror excused.* The record in this case, with reference to this matter, completely

---

[2] When the juror's name was called, he stated that he had served during the last court term, but the trial judge did not hold him disqualified.

quoted above, shows nothing further. Counsel raised no objection to the substituted juror, nor endeavored to show any reason why the replacement could not, or would not, try the case with fairness or impartiality.

While the Opinion in the Green case cited no authority for the Court's position, such authority does exist. In *People* v. *Rich,* 237 Mich. 481, 212 N. W. 105, the Michigan Supreme Court said:

"After the defendant had exhausted his peremptory challenges, the prosecution was permitted to exercise peremptory challenges although it had previously expressed satisfaction with the jury. There was no error in allowing this to be done."

We like the logic of the Michigan Court in the case of *People* v. *Mullane,* 256 Michigan Reports, 54 (a case similar in some respects to our own *Green* case, and also bearing some similarity to the case at Bar). There, the defendants were being tried on a charge of kidnapping, and it developed that two jurors, who had already been finally accepted by counsel for all parties, were probably disqualified by reason of prior jury service. These jurors were excused by the court. The defendants had theretofore exhausted all their challenges, and at a conference in Chambers, the trial judge announced that he would be "liberal in any reasonable objection to any juror which would be taken as a challenge for cause", but would allow no more peremptory challenges. Two jurors were then called in lieu of the two excused, and after examination by counsel, the jury was completed and sworn. The defendants were convicted, and the action of the court in excusing the jurors after defendants had exhausted their challenges, was assigned, *inter alia,* as error, on appeal to the Supreme Court.

From the Opinion of the Supreme Court:

"The examination of these jurors does not appear in the record, nor do counsel claim that they were not in every way qualified to sit. * * *"

Further:

"In what way can it then be said that the defendants were deprived of the right of further peremptory challenge by the course pursued? If defendants' counsel chose to exercise all of their peremptory challenges before the jury were ordered to arise and be sworn, they took the chance that after they had done so it might be discovered that a person not qualified to sit was among the number in the jury box and that he or she might be removed therefrom by order of the court. * * *"

To this language, we might add that there is nothing to prevent a defendant saving a peremptory challenge for such a situation as occurred in the instant case.

If it be said that this holding may well permit a wholesale discharge of jurors after acceptance, we disagree.[3] Of course, in the Michigan cases just cited, more than one juror was excused, but we conclude this is a matter that rightly directs itself to the discretion of the trial court, which conducts the trial, and is charged with the responsibility of maintaining a proper balance, seeing that no undue advantage is taken by either side. We cannot conceive of any court permitting the challenge of several jurors already accepted, unless good and sufficient reason be shown, and such action by a trial court, without sufficient cause, might well constitute an abuse of discretion.

The purpose of the law is to give a defendant a fair and impartial trial, and in furtherance of affording full protection, a defendant is given more peremptory challenges than the State. To compel the showing of cause as to why a substituted juror should not serve, is certainly not an unreasonable requirement. Can it be doubted but that a trial court would quickly excuse a prospective venireman if the slightest hint of prejudice were shown? Nor can it be said that a defendant is

---

[3] That is, if one juror can be discharged at the instance of the State after the defendant has exhausted his challenges, additional jurors can be peremptorily challenged to an extent limited only by the number of peremptory challenges remaining to the State.

discriminated against by permitting the State to exercise such a peremptory challenge, for if the circumstances are reversed, and the State has previously exhausted all of its challenges, the defendant has the privilege of peremptorily challenging a juror already accepted.

Appellant's contention is held to be without merit. In order that there may be no misunderstanding, the case of *Williams* v. *State, supra,* is specifically overruled insofar as it holds that the State **cannot peremptorily challenge a juror, already accepted, after the defendant** has exhausted his challenges; likewise, the cases of *McGough* v. *State,* 113 Ark. 301, 167 S. W. 857, and *Temple* v. *State,* 126 Ark. 290, 189 S. W. 855, are overruled to the same extent.

The other point which, we feel, merits detailed discussion, relates to the testimony of Dr. E. I. Shaw of the State Hospital. Dr. Shaw stated that it was his opinion that Nail knew right from wrong, and he further testified regarding the hospital staff report, which was introduced, relating to appellant. Dr. Shaw signed the report as the examining physician, and the report states that it is his opinion and the joint opinion of the psychiatric staff that William Frank Nail was not mentally ill to the degree of legal irresponsibility at the time of the alleged commission of the crime, nor at the time of the examination. The report was a composite report, compiled from the findings of fourteen state hospital physicians. Appellant accordingly contends that in admitting this report and permitting Dr. Shaw to testify relative to it, hearsay evidence was admitted; that he had no opportunity to examine the unnamed persons whose findings were included in the report, and the admission of such evidence was highly prejudicial. In *Gerlach* v. *State,* 217 Ark. 102, 229 S. W. 2d 37, we held that it was necessary for the examining physician to sign the report and appear to testify. True, in the *Gerlach* case, the diagnosis is confined to the statement of the examining physician, *i.e.,* the report states, ''It is my opinion that Robert Earl Gerlach is

mentally competent", *etc.*, but the report commences with the statement, "*We*[4] have completed our examinations in the case of Robert Earl Gerlach, who was admitted to the state hospital under Act No. 3, and I hereby certify that this is a true and correct finding of the facts in this case. \* \* \*" While the exact point here raised was not urged in the *Gerlach* case, it has been subsequently raised and held to be without merit. In *Leggett* v. *State,* 228 Ark. 977, 311 S. W. 2d 521 (the second *Leggett* case), this Court said:

"The present petition states that Leggett, in connection with his plea of insanity, was sent by the court to the State Hospital for a medical examination. The petition charges that, although the Hospital's report reflected the opinion of the examining medical staff, not all the members of the staff were called as witnesses at the trial. This omission, it is said, deprived Leggett of his constitutional right to be confronted with the witnesses against him. U. S. Constitution, Amendment 6, Ark. Constitution, Article 2, Section 10.

This contention is foreclosed by our affirmance of the original judgment. This same argument was made upon the first appeal and was found to be without merit. The issue was not specifically mentioned in the opinion, for it was necessary to examine dozens of objections in the record, and, as is our practice, we limited our discussion to what were considered to be the appellant's strongest points. The Opinion explained, however, that we had examined the entire record and had considered all the issues raised."

Since no discussion of the Court's reasoning was included in either the first or second Leggett cases, we take this occasion to more fully detail the basis for this holding.

In the first place, only the defendant and his counsel know what defense will be relied on, and it may not be known until the day of the trial whether the defendant will plead insanity as a defense. Accordingly, it

---

[4] Emphasis supplied.

would seem most illogical, or unreasonable, to require all of the doctors, who participated in any phase of the examination, to leave their varied duties and travel to some point in the state, perhaps a long distance away, solely on the possibility that the defendant might want to call them as witnesses. In fact; Section 12 of Initiated Act No. 3, adopted in November, 1936,[5] provides, "Witnesses employed by the State Hospital shall be so summoned to appear as to require as little loss of time as possible from their other duties." Let it be remembered that the report is prepared and forwarded to the court and clerk sometime in advance of the trial, and there is nothing to prevent defense counsel from ascertaining the names of all the doctors who participated in any phase of the examination, and talking with those doctors relative to their findings. Should counsel then deem it advisable, particular doctors could be summoned to appear at the trial. Section 12 also provides, "The physician or physicians who prepared the report shall be summoned as witnesses at the trial at the order of the trial judge or at the request of either party, and if summoned, shall be examined by the court, and may be examined by either party, and a copy of the written report hereby required shall be given in evidence in every case in which the fact of sanity is an issue at the trial." Accordingly, a defendant is not denied the opportunity to question those who examine him. Relative to the contention that the report constitutes hearsay evidence, we point out that hearsay evidence is, by legislative enactment, presently admissible in several types of cases.[6] Such statutes, of course, authorize specific exceptions to the hearsay rule, and the people likewise by enactment, have the authority to authorize exceptions. The report is such an exception, and the act mandatorily requires that a copy of the written report be filed.

---

[5] Under the provisions of this Act, a defendant may be committed for observation.

[6] For instance, see § 48-940, which permits evidence, in certain liquor violation cases, of defendant's reputation for boot-legging or being engaged in the illicit manufacture of, or trade in, intoxicating liquors.

By assignment No. 4, appellant asserts that the verdict is excessive, but as we have many times stated, the matter of assessing punishment is strictly within the province of the jury, and we have no power to change the fixed punishment unless the proof fails to sustain the charge for which the defendant is convicted. See *Allison* v. *State,* 204 Ark. 609, 164 S. W. 2d 442, *Rorie* v. *State,* 215 Ark. 282, 220 S. W. 2d 421, *McCall* v. *State,* 230 Ark. 425, 323 S. W. 2d 421.

Other objections and assignments of error are noted, but a discussion of each would only prolong this Opinion, which is already lengthy, and serve no good purpose. Suffice it to say that we have considered each objection and alleged error, and find them to be without merit.

Counsel in this case were appointed by the trial court to defend appellant, and were paid a fee of $125 each, under the provisions of § 43-2415, Ark. Stats. (1947) Anno. Said statute provides *inter alia* that "any attorney at law appointed by the Circuit Court to defend a person charged in said Court with the commission of a crime, whether misdemeanor or felony, shall receive for his services in representing said accused a fee of not less than Twenty-five Dollars ($25.00) and not more than Two Hundred Fifty Dollars ($250.00), the amount of which shall be fixed by the Circuit Court."[7] Counsel list the work done in preparation of the case, suggest that the fee allowed was not intended to cover an appeal, and request an additional fee. It will be noted that the statute recites that the fee shall be fixed by the Circuit Court, which we consider a salutary provision, inasmuch as that court is familiar with the finances of the county, and has knowledge of the amount appropriated for this purpose. We therefore hold that the amount of fee awarded under this section is entirely within the discretion of the Circuit Court.

---

[7] This section provides that the quorum court of any county "whose population did not exceed 100,000 by the most recent federal census may make an appropriation to pay for the services of attorneys appointed by the Circuit Court to defend persons accused of committing a crime." The appropriation must have been made before any fee can be allowed.

Finding no reversible error, the judgment of the Circuit Court is herewith affirmed, but there is a matter we think worthy of comment. The accused did not testify in his own behalf, and we note from the record that this decision was made by appellant himself. Counsel took appellant into Chambers, and requested the court to advise Nail of his rights. The court then explained that the defendant has the privilege at all times to either take the stand and testify in his own defense, or to not take the stand, and Nail was twice asked if he desired to take the stand. Each time, he replied that he did not. There is a heavy responsibility upon any attorney defending one charged with crime, and this is particularly true where one is being tried for a capital offense, and even more so when defendant's counsel are court appointed. Under the circumstances of this case, we think these attorneys should be commended for leaving this decision to appellant, and making a record of the proceedings thereto, for when this is done, there is no possibility that an accused can blame his appointed lawyers for his failure to testify, possibly feeling that this omission contributed to his conviction, nor later embarrass them by stating that he was prevented from testifying by the advice of counsel. We think the attorneys exhibited good judgment in handling the matter as they did, and we commend this procedure as worthy of consideration by any attorney acting under court appointment.

GEORGE ROSE SMITH, J., concurs.

ROBINSON & JOHNSON, JJ., dissent.

GEORGE ROSE SMITH, J., concurring. When this case was discussed in conference I voted to overrule *Green* v. *State* and to return to the rule adopted in *Williams* v. *State*, which I consider to be the better rule. But a majority of the court took the other view and decided to adhere to the doctrine of the *Green* case. In this instance I think the desirability of certainty in the law outweighs the advantages that are to be found in the rule of *Williams* v. *State*.

For that reason I yield by personal convictions to the majority and will in the future regard today's decision as a binding precedent, not to be overruled.

SAM ROBINSON, Associate Justice, dissenting. One of the most important parts of a jury trial is the selection of the jury. This is especially true where a ciminal case has received wide publicity and a great number of citizens are likely to have some feeling in the matter, one way or the other, although such opinion or belief by a particular venireman is not sufficient to challenge for cause. For instance, a venireman states on his voir dire examination that he has read accounts of the alleged offense in the newspapers; that he has heard the case discussed and has formed an opinion as to the guilt or innocence of the accused, but has not talked to anyone that purported to have personal knowledge of the facts; and that he can put aside any opinion he has formed and try the case according to the law and the evidence. According to many decisions of this Court such a venireman is qualified to serve as a juror. Very likely in a case of this kind the defendant is compelled to exercise a peremptory challenge unless he feels to a moral certainty that the opinion the venireman has is in his favor.

When all things are taken into consideration, the 12 peremptory challenges allowed the defendant in a capital case are not excessive by any means; in fact, prior to the adoption of the Criminal Reform Act in 1936 the defense could exercise 20 peremptory challenges. Usually by the time 12 jurors are accepted the defendant has exhausted all 12 of his peremptory challenges, and then at that stage of the proceedings to allow the State to challenge jurors that have already been accepted, without giving any reason whatever, is contrary to the statutes and contrary to fair play.

If the prosecuting attorney can challenge one juror in such circumstances, why should he not be allowed to challenge all 12? Is it because challenging one would be a little error and challenging 12 would be a big error? One is naive indeed who does not think that both the prosecution and the defense take full advantage of every angle of

the law to get on the jury people they believe will be most likely to see their side of the case.

The statutes of this State pertaining to the selection of a jury are clear as to every detail. But for some reason the majority have completely ignored the statutes. In my opinion the very issue involved is regulated by statute. In the first place, Ark. Stat. § 43-1903 provides:

"Felonies, selection in.—In a prosecution for felony, the clerk, under the direction of the court, shall draw from the jury box the names of twelve petit jurors, who shall be sworn to make true and perfect answers to such questions as may be asked them touching their qualifications as jurors in the case on trial, and each juror may be examined by the State and cross-examined by the defendant, touching his qualifications. *If the court decide he is competent, the State may challenge him peremptorily or accept him, then the defendant may peremptorily challenge or* accept him. . . ." [Emphasis supplied]

It will be noticed that after the court decides a venireman is competent the State must first challenge him peremptorily or accept him. It is clear from the statute that the defendant has to accept or challenge only after the State has first done so. This statute does not provide that both the prosecution and the defense can accept a venireman as a juror and then the prosecuting attorney change his mind and exercise a peremptory challenge, after the defendant has exhausted his challenges. If such action is permitted, the above statute is nullified, and that appears to be what the majority have approved.

Ark. Stat. § 43-1910 provides: "Challenge defined.— A challenge is an objection to the trial jurors and is of two kinds:

"First. To the panel.

"Second. To the individual juror."

§ 43-1913: "Individual juror, challenge to. — The challenge to the individual juror is:

"First. For cause.

"Second. Peremptory."

§ 43-1914: "When challenge taken.—It must be taken before he is sworn in chief, but the court, for a good cause, may permit it to be made at any time before the jury is completed."

Surely the majority must think this section means something; the statute in effect says that the court can permit a juror to be excused, after once being accepted, only for a *good cause*. I just don't see how this statute can be construed as having any other effect, and yet it is completely ignored. The prosecution was permitted to challenge the juror without stating any cause, good or otherwise.

§ 43-1915: "Challenge for cause.—The challenge for cause may be taken either by the State or by the defendant."

§ 43-1916: "General or particular.—It may be general, that the juror is disqualified in serving in any case, or particular, that he is disqualified from serving in the case on trial."

§ 43-1917: "Cause of general challenge.—Causes of general challenge are:

"First. A want of the qualifications prescribed by law.

· "Second. A conviction for a felony.

"Third. Unsoundness of mind, or such defect in the faculties of the mind, or organs of the body, as renders him incapable of properly performing the duties of a juror."

§ 43-1918. "Particular causes.—Particular causes of challenge are actual and implied bias."

§ 43-1924. "Order of challenges.—The challenge to the juror shall first be made by the State and then by the defendant, *and the State must exhaust her challenges to each particular juror* before such juror is passed to the defendant for challenge or acceptance." [Emphasis supplied]

No effect can be given to this statute and permit the State to challenge a juror previously accepted, after the defendant has exhausted his challenges. Of course, the court can excuse a juror for cause after he has been accepted by both sides. But it must be remembered that in the case at bar the juror was peremptorily challenged; no cause or reason was given.

In an uninterrupted line of cases extending over a period of nearly a hundred years, this Court has consistently held that it was error to allow the prosecution to peremptorily challenge a juror previously accepted, after the defendant had exhausted his challenges. *Williams* v. *State,* 63 Ark. 527, 39 S. W. 709; *McGough* v. *State,* 113 Ark. 301, 167 S. W. 857; *Ruloff and Berger* v. *State,* 142 Ark. 477, 219 S. W. 781; *Dewein* v. *State,* 114 Ark. 472, 170 S. W. 582; *Hanna* v. *State,* 183 Ark. 810, 38 S. W. 2d 1090; *Bevis* v. *State,* 90 Ark. 586, 119 S. W. 1131. The majority specifically overrule the *Williams* case, decided in 1897, but fail to mention *Temple* v. *State,* 126 Ark. 290, 189 S. W. 855, decided in 1916. There the Court said: "It was held in some of these cases that the court, in its discretion, might permit the State to use a peremptory challenge on a juror who had been accepted by both sides where the defendant had not exhausted all of his peremptory challenges; but in all the cases in which it was held not to have been error to permit this action, the defendant had not exhausted his peremptory challenges. The test seems to be whether the defendant has remaining as many challenges as the State is permitted to exercise, and upon the authority of these cases, the judgment of the court must be reversed".

To sustain its opinion the majority have cited *Green* v. *State,* 223 Ark. 761, 270 S. W. 2d 895. But that case is not in point with the case at bar. There a juror was excused by the court on its own motion, the court being of the opinion that the juror was disqualified because of having rendered jury service within the past two years and that the defendant could not waive such disqualification. The court's action was not arbitrary. The juror was excused because the court thought it would be error not to

excuse him. Such action on the part of the trial court is not analogous to the situation in the case at bar, where the prosecuting attorney, after the defendant had exhausted his challenges, was permitted to peremptorily excuse a juror who had been accepted by both sides. The statute provides that "for a good cause" a challenge may be exercised at any time before the jury is completed. Here the prosecuting attorney stated no cause and gave no reason for challenging the juror, and certainly this court does not know the reason for such action, but it could have been that at that stage of the proceedings the prosecuting attorney knew the identity of the next venireman to be called and decided he would be a better juror from the standpoint of the State than the juror previously accepted. The majority say that the defense should always reserve some challenges to meet such a contingency. The least that can be said is that the suggestion does not show a realistic concept of the problem of selecting a jury. In a capital case the defense has only 12 challenges. Of course, the personnel of the jury is of the utmost importance. Frequently whether a case is won or lost depends on the judgment exercised by counsel in using his peremptory challenges. In many instances the 12 challenges allowed are a great deal less than the number counsel feels he should have to get a fair and impartial jury, and to say that a defense lawyer should use only 7 or 8 peremptory challenges during the selection of the 12 jurors, out of perhaps dozens or even hundreds of veniremen that are examined, because after the 12 had been selected the prosecution may excuse 4 or 5 of those already accepted by both sides, deprives the defendant of the right to select a jury as provided by statute.

The majority say "a litigant is not entitled to a particular juror." Of course, this assertion is good law, but in the case at bar that principle of law is not followed, because here the State was allowed to have a particular juror, the prosecution challenged one previously accepted, without giving any reason, and selected another juror after the defendant had exhausted his challenges. Thus the State was allowed to select a particular juror.

To support their views, after a most diligent, exhaustive and careful search the majority have been able to cite only two cases from any of the state or federal courts over the whole United States, and neither case is in point. First, the *Green* case [223 Ark. 761, 270 S. W. 2d 895], heretofore discussed, which is shown to be not in point; and, second, the Michigan case of *People* v. *Rich,* 237 Mich. 481. Upon careful investigation it will be seen that neither does this Michigan case support the majority. In Arkansas the statutes, as heretofore pointed out, clearly govern and control the order of challenge of the respective parties in the selection of a jury. In the Michigan case of *Hamper's Appeal,* 51 Mich. 71, the court said: "The question of order of challenge is one of practice and discretionary with the trial court. Peremptory challenge, so far as it extends, is a right secured by statute, of which neither party can be deprived until the jury are sworn."

But our statute, § 43-1914, provides that only a *challenge for cause* may be made after a juror has been selected. Moreover, the Michigan statute, 3 Mich. C. L. 1948, § 769.26, requires that the judgment be affirmed regardless of error unless it affirmatively appears that the error resulted in prejudice. That is not the law in Arkansas. Here it is presumed that an error is prejudicial unless it affirmatively appears to the contrary. *St. Louis & S.F.R. Co.* v. *Crabtree,* 69 Ark. 134, 62 S. W. 64; *Neal* v. *Brandon,* 70 Ark. 79, 66 S. W. 200; *St. Louis, I.M. & S.R. Co.* v. *Steed,* 105 Ark. 205, 151 S. W. 257. Certainly there is no showing in this record that the prosecution's action in challenging a juror already accepted and substituting another was not prejudicial to the defendant. This Court said in *Williams* v. *State,* 63 Ark. 527, 39 S. W. 709: "It is true that we cannot certainly say just how the discharge of these jurymen was prejudicial to the defendant. Indeed, we may not be able to say positively that it was prejudicial to him at all; but at the same time we cannot say that it was not detrimental to him, and in fact we are rather inclined to think it was. But this uncertainty is of itself a strong argument against the pro-

priety of such a procedure.'' Moreover, in the Michigan case of *People* v. *Rich,* 237 Mich. 481, the court was equally divided. Apparently according to Michigan law under such circumstances judgments are affirmed. In the other Michigan case of *People* v. *Mullane,* 256 Mich. 54, cited by the majority, the court points out that the jurors were *excused for cause.* And, incidentally, the earlier case of *People* v. *Rich* is not even mentioned in the Mullane case.

In my opinion it boils down to the proposition that there is no authority to sustain the majority in holding that the prosecuting attorney can peremptorily challenge a juror previously accepted, after the defendant has exhausted his peremptory challenges. In fact, all the law of this State, both statutory and case law, is to the contrary. The *Green* case [223 Ark. 761, 270 S. W. 2d 895] cited by the majority, is not in point, because there the court excused the juror on its own motion, thinking the juror was disqualified; and the Michigan case of *People* v. *Rich* is not in point because the order of exercising challenges is not regulated by statute in Michigan, but is discretionary with the trial court, whereas in Arkansas such order of challenge is specifically regulated by statute. In criminal cases especially a statute prescribing the manner in which challenges shall be exercised is mandatory. *State* v. *Jones,* 191 Pac. 1075.

For the reasons set out herein, I respectfully dissent.

I am authorized to say that Mr. Justice JOHNSON joins in this dissent.